UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HMC ASSETS, LLC SOLELY IN ITS       CIVIL ACTION NO.
CAPACITY AS SEPARATE TRUSTEE OF      14-10321-MBB
CAM MORTGAGE TRUST 2013-1,
    Plaintiff,

          v.

MARION R. CONLEY,
    Defendant.


**MEMORANDUM AND ORDER RE:**
**MOTION TO STRIKE THE AFFIDAVIT OF RENEAU LONGORIA (DOCKET ENTRY # 80); MOTION TO STRIKE THE AFFIDAVIT OF GARY MCCARTHY (DOCKET ENTRY # 70); PLAINTIFF HMC ASSETS, LLC SOLELY IN ITS CAPACITY AS SEPARATE TRUSTEE OF CAM MORTGAGE TRUST 2013-1'S MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY # 59)**

**August 22, 2016**

**BOWLER, U.S.M.J.**

Pending before this court is a motion for summary judgment filed by plaintiff HMC Assets, LLC Solely in its Capacity as Separate Trustee of CAM Mortgage Trust 2013-1 ("plaintiff," "Home Assets" or "HMC as CAM Mortgage") against defendant Marion R. Conley ("defendant"). (Docket Entry # 59).  Defendant opposes the motion and separately moves to strike affidavits submitted in support of the motion for summary judgment.  (Docket Entry ## 70 & 80).  After conducting a hearing, this court took the motions (Docket Entry ## 59, 70, 80) under advisement.

PROCEDURAL BACKGROUND

On April 18, 2014, plaintiff filed an amended complaint that sets out the following counts:  (1) breach of contract due to defendant's default on a loan and mortgage payments (Count I); (2) declaratory judgment that a March 7, 2014 foreclosure on the 23 Golf View Drive, Nantucket, Massachusetts property ("the property") was valid (Count II); (3) deficiency judgment for the total amount of defendant's debt owed to plaintiff (Count III);[1] (4) judgment of possession of the property (Count IV); (5) use and occupancy payments for the period of time after the foreclosure (Count V); and (6) writ of assistance from the court to enforce the judgment (Count VI).  (Docket Entry # 11).

On October 2, 2015, plaintiff filed the summary judgment motion pursuant to Fed.R.Civ.P. 56 ("Rule 56") on all claims in the amended complaint and on defendant's counterclaim.  (Docket Entry # 59).  Plaintiff argues that it acquired title to the property pursuant to a lawful foreclosure sale and that the foreclosure was conducted in strict compliance with Massachusetts law thus giving plaintiff standing to foreclose.  (Docket Entry # 60).  The counterclaim set out seven counts.  Counts two through seven respectively assert claims for breach of contract, breach of the implied covenant of good faith and fair dealing, negligence, unlawful foreclosure, an accounting

---

[1]  Plaintiff voluntarily dismissed Count III on June 24, 2015. (Docket Entry # 44).

and violation of Massachusetts General Laws chapter 93A
("chapter 93A").   Count One seeks relief under Massachusetts
General Laws chapter 185, section 114.   Defendant opposes the
motion.   (Docket Entry # 68).

Subsequently, after filing the opposition to the summary
judgment motion (Docket Entry # 68), defendant filed two motions
to strike affidavits submitted by plaintiff (Docket Entry ## 70,
80).   Defendant argues that the affidavits submitted by
plaintiff (Docket Entry ## 62, 63, 63-11 & 73) are inadmissible
because they are not based on personal knowledge and therefore
constitute inadmissible hearsay.   (Docket Entry ## 70, 80).

Additionally, defendant asserts that exhibits submitted
with the affidavits do not meet the business record exception
under Fed.R.Evid. 803(6)(A) and that the affidavits made by
plaintiff's counsel (Docket Entry ## 62, 73) do not satisfy the
qualified witness requirement under Fed.R.Evid. 803(6).   (Docket
Entry ## 70, 80).   Defendant requests that this court strike the
challenged affidavits and all of their associated exhibits from
the summary judgment record and award plaintiff attorney's fees
and costs in bringing the motions.   (Docket Entry ## 70, 80).
Plaintiff opposes the motions to strike.   (Docket Entry ## 71,
81).

I.   Motions to Strike

"A motion to strike is the appropriate means of objecting to the use of affidavit evidence on a motion for summary judgment."  See Facey v. Dickhaut, 91 F.Supp.3d 12, 19 (D.Mass. 2014).  Furthermore, Rule 56(c)(4) states that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed.R.Civ.P. 56(c)(4).  "If evidence cannot be presented in a form that would be admissible at trial, the court may not rely on it."  Facey v. Dickhaut, 91 F.Supp.3d at 19.

To establish an acceptable affidavit, the affiant should testify that he was somehow personally involved in the events for which he is testifying and not base his testimony upon out-of-court statements made for the truth of the matter asserted.  See Fed.R.Evid. 802; Perez v. Lorraine Enterprises, Inc., 769 F.3d 23, 31 (1st Cir. 2014); Garside v. Osco Drug, Inc., 895 F.2d 46, 49-50 (1st Cir. 1990).  Personal knowledge is satisfied when the statements made by the affiant are based in fact "as opposed to conclusions assumptions, or surmise."  Perez v. Volvo Car Corp., 247 F.3d 303, 316 (1st Cir. 2001) (internal citation omitted).

Furthermore, Rule 56 "requires a scalpel not a butcher knife.  The *nisi prius* court ordinarily must apply it to each

4

segment of an affidavit, not to the affidavit as a whole."

Perez v. Volvo Car Corp., 247 F.3d at 315.  The First Circuit in

Perez instructs that a selective approach should be taken when

determining the admissibility of an affidavit, "intending to

disregard those parts of it that are inadmissible and to credit

the remaining portions."  Id.

Because the motions to strike bear on the evidence that

this court will consider in deciding plaintiff's motion for

summary judgment, they shall be considered first.  See Facey v.

Dickhaut, 91 F.Supp.3d at 19.  First, defendant has moved to

strike the affidavit of Gary McCarthy ("McCarthy affidavit") as

well as the exhibits attached to the affidavit.  (Docket Entry #

70).  Defendant argues that the affidavit was not based on the

personal knowledge of the affiant, Gary McCarthy ("McCarthy"),

and therefore constitutes inadmissible hearsay.  (Docket Entry #

70).  Defendant further contends that the McCarthy affidavit

lacks statements of fact and instead contains baseless and

conclusory assumptions that lack a proper foundation and do not

support the possible knowledge of the affiant.  (Docket Entry #

70).

As pointed out by plaintiff, McCarthy states that he made

the affidavit on the basis of his personal knowledge.  (Docket

Entry # 63).  Additionally, McCarthy, a member of Home Assets,

attests in the affidavit that he personally reviewed the

servicing records for the Nantucket property, which were prepared in the ordinary course of business of BSI Financial Services ("BSI"). (Docket Entry # 63). Plaintiff submits that the McCarthy affidavit and its attachments satisfy the foundational requirements for the business records exception to the hearsay rule and that the foreclosure affidavit of Manuel Villegas ("Villegas") satisfies the requirements of Massachusetts General Laws chapter 244 ("chapter 244"), section 15. (Docket Entry # 71).

McCarthy states in the affidavit that he has personal knowledge as a member of plaintiff's business. (Docket Entry # 63). Having worked for plaintiff and reviewed the actual records of defendant's mortgage loan, he averred that they were kept in the ordinary course of business of BSI, the servicer for Home Assets, and maintained by BSI or Home Assets employees. (Docket Entry # 63).

Defendant argues that McCarthy does not attest to what personal knowledge he has or how he was able to obtain such personal knowledge. According to defendant, McCarthy, a manager for Home Assets, did not have a foundation showing how BSI "created, kept or maintained" the records. (Docket Entry # 70).

"Evidence to prove personal knowledge may consist of the witness's own testimony." Fed.R.Evid. 602. McCarthy's own testimony, however, reflects that he was able to obtain personal

knowledge over defendant's mortgage loan by explaining that he
has been working for plaintiff for close to five years.  (Docket
Entry # 63).  It is true that McCarthy, as an employee of Home
Assets, is not qualified to testify about the ordinary course of
BSI in maintaining the records of BSI.  Villegas, however, is an
employee of BSI and he submitted an affidavit that satisfies
Rule 803(6) with respect to the records maintained by BSI
including the note history and other business records of BSI
regarding the "servicing and loan payment histories." (Docket
Entry # 62-6).  The court in Perdomo v. Federal Nat'l Mortg.
Ass'n, 2013 WL 1123629, at *2 (N.D. Tex. Mar. 18, 2013),
rejected a similar challenge to an affidavit of an employee of a
servicer in light of her review of the loan records at issue.
Further, notwithstanding defendant's argument to the contrary,
the fact that McCarthy was an employee of Home Assets as opposed
to BSI does not prevent him from being a qualified witness.  See
Phillips v. Mortg. Elec. Registration Systems, Inc., 2013 WL
1498956, *3 (N.D.Ala. April 5, 2013) (Rule 803(6) "does not
require testimony by some witness associated with the
predecessor entity when the records become part of the records
of a successor entity").

The hearsay exception for business records allows admission
into evidence of a record if it was made at or near the time by
someone with knowledge, kept in the ordinary course of business,

made within a regular business activity, and all of these requirements are shown by a qualified witness of the records, with no indication of trustworthiness made by the opponent. Fed.R.Evid. 803(6).  In regards to the "qualified witness" requirement of the business record exception, "it is well established that the witness need not be the person who actually prepared the record.  A qualified witness is simply one who can explain and be cross-examined concerning the manner in which the records are made and kept.[2]  Wallace Motor Sales, Inc. v. American Motors Sales Corp., 780 F.2d 1049, 1061 (1st Cir. 1985) (citations omitted); see also United States v. Kayne, 90 F.3d 7, 12-13 (1st Cir. 1996) (citing to Wallace that qualifying witness need not have actually prepared the business record, just that he can be cross-examined on the matter of how record was made and kept).

Defendant argues that McCarthy, despite being an employee of plaintiff, fails to meet the "qualified witness" requirement

---

[2]  Other than quoting a case in a footnote that a qualified witness is "'one who can explain and be cross-examined concerning the manner in which the records are made and kept'" (Docket Entry # 70, n.3), defendant makes no argument that a lack of cross examination precludes the admissibility of the documents under Rule 803(6).  See Bellone v. Southwick-Tolland Regional School Dist., 748 F.3d 418, 421 (1st Cir. 2014) (discussing waiver); Coons v. Industrial Knife Co., Inc., 620 F.3d 38, 44 (1st Cir. 2010); see generally United States v. Burgos-Montes, 786 F.3d 92, 119-20 (1st Cir.) (discussing Rule 803(6)), cert. denied, 136 S.Ct. 599 (2015).

under the business records exception.  (Docket Entry # 70).  In the affidavit, however, McCarthy demonstrated a knowledge and a familiarity with how the loan documents were made with defendant and how those records were serviced and maintained.  (Docket Entry # 63).

Defendant further submits that McCarthy's attestations are conclusory.  To the contrary, the McCarthy affidavit lays out factual statements regarding the loan history between plaintiff and defendant based on McCarthy's own personal knowledge as well as his review of the business records.  (Docket Entry # 63).  Defendant's reliance on Sheinkopf v. Stone, 927 F.2d 1259, 1271 (1st Cir. 1991), is misplaced because in Sheinkopf the affidavit was deficient due to the conclusory statements and mere allegations made solely based on the belief of the affiant.

Defendant further asserts that there is no specific evidence about how the records were created, kept or maintained.  (Docket Entry # 70).  Yet, an affiant is only required to have some familiarity and ability to explain the maintenance of the business records in question, especially when elements of trustworthiness are present.  See Wallace Motor Sales, Inc. v. American Motors Sales Corp., 780 F.2d at 1061 (citing NLRB v. First Termite Control Co., Inc., 646 F.2d 424, 427 (9th Cir. 1981)); see also United States v. Kayne 90 F.3d at 12-13.  McCarthy refers to a number of facts regarding the mortgage loan

and he discusses the analysis plaintiff utilizes when assessing the possibilities for a loan modification as well as the procedures plaintiff took to engage in a foreclosure sale of the property. (Docket Entry # 63). Therefore, the McCarthy affidavit meets all of the necessary requirements under the business records exception as well as the personal knowledge requirement for affidavits in support of motions for summary judgment. Fed.R.Evid. 803(6); Fed.R.Civ.P. 56(c)(4).

Defendant also raises two state statutory arguments as a means to strike documents attached to the McCarthy affidavit. (Docket Entry # 70). First, defendant states that there is "[n]o evidence of any contractual relationship" between plaintiff and BSI "to service[] Conley's loan" thereby "implicating the Statute of Frauds" in Massachusetts General Laws chapter 259 ("chapter 259"), section one, a writing for the sale of real estate interests." (Docket Entry # 70). The statute of frauds instructs that:

> No action shall be brought . . . [u]pon a contract for the sale of lands . . . or of any interest in or concerning them . . . [u]nless the promise, contract or agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or by some person thereunto by him lawfully authorized.

Mass. Gen. L. ch. 259, § 1 ("chapter 259"). Accordingly, "as a general matter, 'a contract for the sale of land must comply with the Statute of Frauds,' and 'an oral modification will not

be enforced if it results in a "rewriting" of the contract or significantly changes the parties' obligations.'" Akar v. Federal Nat'l Mortg. Ass'n, 845 F.Supp.2d 381, 397 (D.Mass. 2012) (brackets omitted); see Seidel v. Wells Fargo Bank, N.A., 2012 WL 2571200, at *4 (D.Mass. July 3, 2012) ("'right to possession of land is an interest in it, and a contract to surrender possession or to forbear for a time to exercise a right to take and retain possession is within the statute of frauds'"); RFF Family Partnership, LP v. Link Development, LLC, 907 F.Supp.2d 155, 163 (D.Mass. 2012) (although "Statute of Frauds prohibits oral contracts for the sale of land, or interests in the sale of land, oral agreements that alter the method by which a mortgage is paid off but do not affect the 'right, title and interest' in the security are enforceable").

BSI's authority to act on behalf of HMC as CAM Mortgage as a servicer does not implicate a "contract for the sale of lands" within the meaning of chapter 259, section one. See First Pennsylvania Mortg. Trust v. Dorchester Savings Bank, 481 N.E.2d 1132, 1138 (Mass. 1985); Aragao v. Mortg. Elec. Registration Systems, Inc., 22 F.Supp.3d 133, 139 n.6 (D.Mass. 2014); Akar v. Federal Nat'l Mortg. Ass'n, 845 F.Supp.2d at 397; see also Greenfield v. Pearlstein, 1995 WL 106051, at *2 (Mass.App.Div. Feb. 28, 1995) (statute of frauds "inapplicable to contracts which do not entail or contemplate a transfer of land or the

creation of any estate or interest therein and which instead concern the profits or losses arising from the use or sale of realty"). As a servicer, BSI did not own the mortgage and its relationship as a servicer for HMC as CAM Mortgage, the mortgagee and lender, did not involve the transfer of land. In the alternative, a limited power of attorney (Docket Entry # 15-2) evidences that BSI had the authority to act as servicing agent for HMC as CAM Mortgage and satisfy the statute's writing requirement. See also Financial Resources Network, Inc. v. Brown & Brown, Inc., 930 F.Supp.2d 287, 308 (D.Mass. 2013).

Defendant's other statutory argument relies on Massachusetts General Laws chapter 233, section 79A ("section 79A"), which provides for the admissibility of certified copies of public records. Similar to section 79A, certified and signed copies of documents of public records are self-authenticating under the applicable Federal Rule of Evidence, Fed.R.Evid. 902 ("Rule 902"). See Downey v. Bob's Discount Furniture Holdings, Inc., 633 F.3d 1, 8 (1st Cir. 2011) ("[f]ederal evidentiary rules govern in diversity cases"); Ricciardi v. Children's Hosp. Med. Ctr., 811 F.2d 18, 21 (1st Cir. 1987) ("Federal Rules apply to all cases in the district courts, including diversity actions"); Fed.R.Evid. 1101. As discussed above, however, a proper foundation has been established to admit documents attached to the McCarthy affidavit and maintained by BSI under the business

records exception.  Thus, although Rule 902 as well as section 79A provide one means to admit documents of public record into evidence, they are not the only means.  Accordingly, defendant's argument, which relies on a state evidentiary statute, is misguided.

Defendant's final argument regarding the motion to strike challenges the admissibility of the chapter 244, section 15 affidavit of Villegas ("foreclosure affidavit"), which is attached to the foreclosure deed (Docket Entry # 73-1).  (Docket Entry # 70).  As an employee of BSI, Villegas has a sufficient level of familiarity to satisfy the personal knowledge requirement of Rule 56, as he is personally involved with the handling of plaintiff's records.  Fed.R.Civ.P. 56(c)(4); see Perez v. Volvo Car Corp., 247 F.3d at 315.  Moreover, the foreclosure affidavit contains purely factual statements about the publishing of the notice of sale and the occurrence of the public auction of the property.  (Docket Entry # 63-11).  Therefore, it satisfies the personal knowledge requirement of Rule 56.  Fed.R.Civ.P. 56(c)(4); see Perez v. Volvo Car Corp., 247 F.3d at 315.

Defendant's only other challenge to the admissibility of the foreclosure affidavit is that it contains a false statement that BSI "caused a notice of sale to be published" and "mail[ed] the required notices" (Docket Entry # 63-11) when plaintiff's

counsel was the party actually completing these actions (Docket Entry # 62-8, p. 4). (Docket Entry # 70). Under Massachusetts law, "[a]n agency relationship is—created when there is mutual consent, express or implied, that the agent is authorized to act on behalf and for the benefit of the principal, subject to the principal's control." RFF Family Partnership, LP v. Link Development, LLC 907 F.Supp.2d at 161 (citing Theos & Sons, Inc. v. Mack Trucks, Inc., 729 N.E.2d 1113, 1119 (2000)). "It is the conduct of the principal, not the agent, that creates apparent authority." Id. (citing Sheinkopf, 927 F.2d at 1269).

While defendant attempts to cite an inconsistency in the actions of BSI, the foreclosure affidavit expressly states that "BSI Financial Services, Inc., Attorney-in-Fact for [plaintiff] solely in its capacity as Separate Trustee of CAM Mortgage Trust 2013-1, caused a notice of sale to be published" and also establishes BSI Financial Services' compliance with chapter 244 section 14. (Docket Entry # 63-11). Thus, BSI, in the limited capacity in which it acted as an agent for plaintiff, appropriately caused a notice of sale to be published. (Docket Entry # 63-11). Defendant has not presented this court with any evidence to the contrary, nor has defendant presented any evidence to suggest that plaintiff's counsel, or BSI, acted outside of its actual agency in relation to plaintiff.

In regards to defendant's motion to strike the affidavits of plaintiff's counsel ("Longoria affidavits"), defendant argues that they lack a basis for personal knowledge under Rule 56, particularly in regards to the testimony that the original note that plaintiff executed to purchase the property ("the Conley note") is an "original business record" under the hearsay exception.  (Docket Entry # 80).  Additionally, defendant suggests in the motion to strike that plaintiff's counsel is barred from making an affidavit because she is not a "qualified witness."[3]  (Docket Entry # 80).

The Longoria affidavits satisfy the personal knowledge standard because the affidavits are based in fact, "as opposed to conclusions, assumptions, or surmise."  Perez v. Volvo Car Corp., 247 F.3d at 316.  Plaintiff's counsel stated that she had personally appeared at the foreclosure sale of the property in question.  (Docket Entry # 73, ¶ 8).  Moreover, the Longoria affidavits provide purely factual descriptions of the events that transpired at the foreclosure sale, rather than statements of assumptions or conclusions.  Based on the personal observations made by the affiant, the affidavits set out statements of fact based on personal knowledge.  See Perez v. Volvo Car Corp., 247 F.3d at 316.

---

[3]  The affiant of the "Longoria affidavits" is plaintiff's counsel.

As to the testimony made in reference to the business records attached to the Longoria affidavits, the affiant was able to base this testimony on her own firm's handling of plaintiff's business records.  (Docket Entry # 81).  Defendant attempts to argue that the affidavit makes no reference as to *who* at the affiant's law firm was involved with this process or that this was a regularly conducted activity.  (Docket Entry # 80).  Defendant continues by stating that the affiant herself had no personal involvement with anything related to the purported transfer of the Conley note from plaintiff to the affiant's law firm.  (Docket Entry # 80).

As stated above, however, an affiant is only required to have some familiarity and ability to explain how the business records were handled to satisfy Rule 803(6), especially when there is no indication for a lack of trustworthiness.  <u>See</u> <u>Wallace Motor Sales, Inc. v. American Motor Sales Corp.</u>, 780 F.2d at 1061.  As a member of the law firm representing plaintiff in this case, the affiant's statements meet this standard.  <u>See</u> <u>id.</u>  Additionally, plaintiff's counsel has submitted evidence, such as a June 25, 2013 bailee letter ("the bailee letter"), to adequately demonstrate the firm's handling of the relevant business records.  (Docket Entry # 73-1).  The bailee letter attached to Longoria's supplemental affidavit states in pertinent part, "CAM shall retain full ownership

16

thereof and you [plaintiff's counsel] shall hold possession of the Note evidencing the mortgage loan as agent and Bailee for and on behalf of CAM." (Docket Entry # 73-1). Therefore, the affiant has the requisite ability to speak on behalf of the handling of the business records, even without performing the actual task herself. See id. Furthermore, because the documents attached to the Longoria affidavits meet the business record exception, an argument suggesting that they make statements for the truth of the matter asserted is precluded. Reliance on the bailee letter submitted with the supplemental Longoria affidavit, and any other business record meeting the hearsay exception, is therefore appropriate. Fed.R.Evid. 803(6); Wallace Motor Sales, Inc. v. American Motors Sales Corp., 780 F.2d at 1061.

Finally, the mere fact that the affiant is counsel for plaintiff is not a sufficient reason to discredit the testimony provided in the affidavit in question, especially given that the affiant has met the personal knowledge requirement and the document at issue was kept in the ordinary course of counsel's law firm. Fed.R.Evid. 602. "Every person is competent to be a witness" except as otherwise provided in the Federal Rules of Evidence. Fed.R.Evid. 601. Defendant has not produced any authority to support the contention that plaintiff's counsel would be otherwise unfit to submit an affidavit where, as here,

17

she is addressing under oath the maintenance of documents at her law firm and how documents at her law firm are handled.

## II.   Motion for Summary Judgment

Summary Judgment is designed "'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'"  Dávila v. Corporación De Puerto Rico Para La Difusión Pública, 498 F.3d 9, 12 (1st Cir. 2007).  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon the motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

It is appropriate when the summary judgment record shows "there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56.  "'A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party.'"  American Steel Erectors, Inc. v. Local Union No. 7, Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Iron Workers, 536 F.3d 68, 75 (1st Cir. 2008).  "'A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law.'"  Id.  Facts are viewed in favor of the non-

movant, i.e., defendant.  See Noonan v. Staples, Inc., 556 F.3d

20, 23 (1st Cir. 2009).  The summary judgment record sets out the

following facts.

FACTUAL BACKGROUND

On August 15, 2006, defendant, as the borrower, executed

the Conley note to American Home Mortgage, the lender, for

$800,000 (Docket Entry # 11-1) and, to secure the loan, gave a

mortgage ("Conley mortgage") on the property to Mortgage

Electronic Registration Systems, Inc. ("MERS"), as nominee for

American Home Mortgage.  (Docket Entry # 11-2).  The note

required defendant to pay principal and interest by making

monthly payments every month.  (Docket Entry # 63-1).  The

payments on the mortgage were to begin on October 1, 2006 and

continue to be made on the first day every month until the

principal and interest were paid off.  (Docket Entry # 63-1, p.

1).  If defendant failed to make the required payment each

month, then she would be in default under the terms of the

Conley note.  (Docket Entry # 63-1, p. 4).

Furthermore, if defendant should default, the note

stipulated that "the Note Holder may send [defendant] a written

notice telling me that if [defendant does] not pay the overdue

amount by a certain date, the Note Holder may require

[defendant] to pay immediately the full amount of Principal

which has not been paid and all the interest that [defendant]

owe on that amount."[4]  (Docket Entry # 63-1, p. 4).  In regards
to notice, the Conley note required that the Note Holder provide
at least ten days after the date on which the notice is
delivered or mailed to defendant before the Note Holder could
require defendant to pay off the entire principal due to the
default.  (Docket Entry # 63-1, p. 4).  As the sole signor of
the note, defendant was "fully and personally obligated to keep
all of the promises made in the Note, including the promise to
pay the full amount owed."  (Docket Entry # 63-1, p. 5).

    As previously noted, the property that secured the loan
obligation was located at 23 Golf Drive in Nantucket.  (Docket
Entry # 11-1).  The Conley mortgage was filed at the Nantucket
County Land Court, Registry District ("Nantucket County Land
Court") on August 15, 2006.  (Docket Entry # 11-2).  The Conley
mortgage was a refinance used to pay off defendant's prior loan
to Option One Mortgage in the amount of $620,561.34 and resulted
in a cash-out to defendant in the amount of $152,222.89.
(Docket Entry # 11-3).  At the origination of the Conley
mortgage and note, the property was valued at $1,350,000.
(Docket Entry # 11-4).

---

[4]  The Conley note defines the "Note Holder" as American Home
Mortgage or anyone taking the "[n]ote by transfer and who is
entitled to receive payment."  (Docket Entry # 73-1).

Paragraph 22 of the mortgage included a power of sale clause. It states, in pertinent part, that the "Lender shall give notice" of a default and:

> If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law . . ..

> If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by applicable law. Lender shall publish the notice of sale, and the Property shall be sold in a manner prescribed by applicable law.

(Docket Entry # 63-2).

Additionally, the Conley mortgage included a second home rider stating that the "Borrower shall occupy, and shall only use, the Property as [the] Borrower's second home." (Docket Entry # 63-2, p. 21). The Conley mortgage stated that defendant was expected to occupy and use the property as defendant's principal place of residence within 60 days after execution of the mortgage, unless otherwise agreed to in writing. (Docket Entry # 63-2). The second home rider replaced this "principal place" requirement by explicitly stating that the property would be used as a second home for defendant. Both parties agreed to the second home rider. (Docket Entry # 63-2).

As set forth in the loan application, plaintiff owned real property located on East 76th Street in New York City. (Docket

Entry # 63-3).  Defendant indicated on the loan application that her primary residence was this New York property.  (Docket Entry # 63-3).  Additionally, at no time prior to the initiation of the foreclosure process did defendant notify BSI or plaintiff that she was maintaining the property on Nantucket as a primary residence.

On February 8, 2012, as stated in the notarized assignment filed in the Nantucket County Land Court, MERS assigned the Conley mortgage to J.P. Morgan Mortgage Acquisition Corp. ("J.P. Morgan") for value received.  (Docket Entry # 63-6).  As set out in a July 2012 notarized assignment filed in Nantucket County Land Court, J.P. Morgan then assigned the Conley mortgage to HMC Assets, LLC solely in its capacity as Separate Trustee of CAM V Trust ("HMC as CAM V Trust") on July 13, 2012. (Docket Entry # 63-7).  Finally, as stated in the notarized assignment filed in Nantucket County Land Court, HMC as CAM V Trust assigned the Conley mortgage to HMC Assets, LLC solely in its capacity as Separate Trustee of CAM Mortgage Trust 2013-1, i.e., plaintiff, on May 3, 2013.  (Docket Entry # 63-8).

On June 26, 2013, HMC as CAM Mortgage was the holder of the original Conley note.  On that date, HMC as CAM Mortgage tendered the Conley note to its attorney and agent, Doonan, Graves & Longoria, LLC ("DG&L"), to retain possession of the note on behalf of HMC as CAM Mortgage.  (Docket Entry # 73).

After June 26, 2016, HMC as CAM Mortgage retained full ownership of the Conley note with the authority to request that DG&L return the note to HMC as CAM Mortgage, the holder and owner of the note.  (Docket Entry # 73-1) (Docket Entry # 73).  At all times since June 26, 2013, DG&L, HMC as CAM Mortgage's counsel and agent, remained in possession of the Conley note.  (Docket Entry # 73-1) (Docket Entry # 73, ¶¶ 5-7).

Moreover, as likewise established in the affidavit of McCarthy, plaintiff is currently the holder of the Conley note as well as the current assignee of record of the Conley mortgage.[5]  (Docket Entry # 63, ¶¶ 15, 16).  In pertinent part, McCarthy attests as follows:

> An Assignment of Mortgage from HMC Assets, LLC solely in its capacity as Separate Trustee of CAM V Trust to HMC Assets, LLC solely in its capacity as Separate Trustee of CAM Mortgage Trust 2013-1 dated May 3, 2013, was registered with the Nantucket County Registry of District of the Land Court . . ..

> HMC Assets is the current holder of the Conley Note and current assignee of record of the Conley Mortgage.

(Docket Entry # 63, ¶¶ 15, 16).

By October 1, 2009, defendant had defaulted on her loan installment payments.  (Docket Entry # 63, ¶ 17) (Docket Entry # 63-11, p. 3).  As a result, BSI, as servicer of the mortgage for plaintiff, sent a 150 day "Notice of Right to Cure" letter ("35A

---

[5]  Defendant argues that there is no admissible evidence that HMC Assets LLC owns the mortgage.  (Docket Entry ## 70, 80).

letter") dated June 25, 2013 to defendant pursuant to section 35A of chapter 244 ("section 35A").  (Docket Entry # 63-9).  BSI is the servicer of plaintiff.  (Docket Entry ## 62-6, 63-9) (Docket Entry # 62-8, p.5).[6]  According to the 35A letter, defendant did not make the monthly loan payment due on October 1, 2009.  (Docket Entry # 63-9).  The accumulated past due amount totaled $169,550.21.  (Docket Entry # 63-9).  In the 35A letter, BSI required defendant to pay off the past due amount on or before November 29, 2013, which was 150 days from the date BSI sent defendant the 35A letter notifying her of the default. (Docket Entry # 63-9).  In addition, the 35A letter explained that if defendant did not pay the past due amount by the deadline, defendant could be evicted from the property after a foreclosure sale.  (Docket Entry # 63-9).

BSI accompanied the 35A letter with a "Right to Request a Modified Mortgage Loan" notice ("loan modification notice").

---

[6]  By affidavit, plaintiff established that BSI was "the servicer for the mortgage loan" and, in particular, the "servicer of the foreclosing entity," HMC as CAM Mortgage.  (Docket Entry # 62-8, p. 5) (Docket Entry # 62-6).  By letter dated August 29, 2012, defendant was notified that BSI was the servicer of the Conley mortgage.  (Docket Entry # 27, p. 13, ¶ 27) (Docket Entry # 28, p. 5, ¶ 27).  Defendant did not counter this unrebutted evidence with evidence that BSI was not the servicer of plaintiff at the relevant time to support defendant's argument that the notice of default letter did not comply with paragraph 22 of the Conley mortgage.  Defendant's assertion or argument that there was no documentation or written agreement between plaintiff and BSI, which plaintiff denies (Docket Entry # 28, ¶ 30, p. 5), is therefore misguided.

(Docket Entry # 63-10).  The letter stated that under
Massachusetts law defendant was eligible to request a
modification of her mortgage.  (Docket Entry # 63-10).  The loan
modification notice explained that a modification could
potentially change the options given to defendant in the 35A
letter.  (Docket Entry # 63-10).  Defendant submitted an
application to modify the loan.  (Docket Entry # 69-3).  As
stated in the McCarthy affidavit, there are a series of steps
plaintiff applies when reviewing the eligibility of a loan
modification request.  (Docket Entry # 63, ¶¶ 22-26).  The
McCarthy affidavit states that:

> As a good faith effort to avoid foreclosure, HMC
> Assets reviewed Conley for a modification of her
> mortgage in November of 2013.
>
> [Plaintiff] utilizes FHA guidelines when considering
> its borrowers for a loan modification.
>
> Under [Fair Housing Act] guidelines, a borrower's
> mortgage payment must not be in excess of 31% of their
> verifiable monthly average income.
>
> [Plaintiff] used [Defendant's] Federal Tax Returns for
> 2011 and 2012 [to establish defendant's] income.
>
> [Defendant's] mortgage payment including principal,
> interest, taxes and insurance is approximately 62.4%
> of her verifiable monthly average income . . ..
>
> Given the approximate 62.4% ratio of her mortgage
> payment to verifiable monthly average income, Conley
> is not eligible for a modification under FHA
> guidelines.

(Docket Entry # 63, ¶¶ 21-26) (paragraph numbers omitted).[7]

Without a loan modification, defendant failed to cure the default prior to expiration of the 150 days.  Plaintiff subsequently filed with the Land Court Department of the Massachusetts Trial Court ("the Land Court") a "Complaint to Determine Military Status" pursuant to the Servicemembers Civil Relief Act, 50 U.S.C. §§ 501 et seq. ("Servicemembers Act"). (Docket Entry # 11-9).  Pursuant to the Servicemembers Act, an order of notice was published in the *Nantucket Inquirer and Mirror* on January 2, 2014, served on defendant on January 14, 2014, and recorded with the Land Court on January 10, 2014. (Docket Entry # 11, ¶ 18).  The Land Court determined that defendant was not entitled to the benefits of the Servicemembers Act.  (Docket Entry # 11-11).

As set forth by affidavit ("noteholder affidavit") dated December 17, 2013, HMC as CAM Mortgage was the foreclosing entity.  As explained above, DG&L, plaintiff's agent and attorney, was in possession of the note on behalf of HMC as CAM Mortgage, the owner of the note.[8]  The affiant, Villegas, a vice

---

[7]  Defendants argument that plaintiff provided no evidence that BSI considered the loan modification application is therefore inaccurate.

[8]  Although the noteholder affidavit also states that HMC as CAM Mortgage was acting as "the authorized agent of the holder of" the Conley note, any discrepancy as to whether DG&L, plaintiff's counsel, or plaintiff, i.e., HMC as CAM Mortgage, held the note is not material because in either circumstance the foreclosing

president of BSI and an agent of HMC as CAM Mortgage, attests to his familiarity and review of BSI records kept in the ordinary course of BSI's business.  In the noteholder affidavit, Villegas certified that the requirements of section 35B of chapter 244 ("section 35B") had "been compiled with" regarding the Conley note.  (Docket Entry # 62-6).  The noteholder affidavit also states that it is the regular practice of BSI to receive records related to a mortgage loan from another entity.  (Docket Entry # 62-6).  The noteholder affidavit was registered with the Land Court on January 29, 2014.  (Docket Entry # 62-6).  On December 17, 2013, Villegas separately sent defendant a certification pursuant to 209 C.M.R. § 18.21A(2)(c) that HMC as CAM Mortgage was the current owner of the Conley note and the assignee of the Conley mortgage.  (Docket Entry # 62-8, p. 5) (Docket Entry # 62, ¶ 11).

On February 6, 13 and 20, 2014, notice of the foreclosure sale (Docket Entry # 11-13) was published in the *Nantucket Inquirer and Mirror*, a newspaper of general circulation, for three consecutive weeks not less than 21 days prior to the foreclosure sale.  (Docket Entry # 62-7).  Pursuant to chapter 244, sections 14 and 17B, a "Notice of Intent to Foreclose Mortgage" and "Intent to Pursue Deficiency After Foreclosure of

---

entity, plaintiff, or its agent, DG&L, held the Conley note at the time of the foreclosure.

Mortgage" letter was mailed to defendant on February 7, 2014.
(Docket Entry # 62-8).  The letter alerted defendant that the
mortgaged property would be sold at public auction on March 7,
2014, on the mortgaged premises.  (Docket Entry # 62-8).
Plaintiff also notified defendant that on or after the
foreclosure sale, defendant may be liable for any deficiency in
proceeds of the foreclosure sale although "[n]o deficiency after
the foreclosure sale may be pursued if [defendant had] obtained
or will obtain a Chapter 7 bankruptcy."  (Docket Entry # 62-8,
p. 2).  (Docket Entry # 62-8).

Plaintiff purchased the property at a non-judicial
foreclosure sale on March 7, 2014, and registered the
foreclosure deed with the Land Court.[9]  (Docket Entry ## 11-15,
11-16).  On March 7, 2014, plaintiff, by itself or through its
attorney-in-fact and agent (BSI),[10] conducted the foreclosure
sale.  (Docket Entry # 63-11, pp. 1, 3) (Docket Entry # 62, ¶¶
12-13).  The Monroe Auction Group, in turn, was the auctioneer
and BSI was its client.  (Docket Entry # 62-9).  Double B
Capital Group, Inc. ("Double B Capital") was the successful

---

[9]  Plaintiff's counsel stated by affidavit that she was present
at the foreclosure sale on March 7, 2014.  (Docket Entry # 62, ¶
13).
[10]  As an attorney-in-fact of plaintiff, BSI was an agent of
plaintiff.  See Farris v. Shinseki, 660 F.3d 557, 565 (1st Cir.
2011) ("'[u]nder our system of representative litigation, each
party is deemed bound by the acts of his lawyer-agent'"); United
States v. Troy, 564 F.Supp.2d 42, 46 (D.Me. 2008).

bidder at the foreclosure sale, but failed to consummate the sale of the property. (Docket Entry # 62, ¶¶ 14, 16). Therefore, as the second highest bidder, plaintiff successfully purchased the property for $675,000.00. (Docket Entry # 63-11).

After the public auction, counsel for plaintiff responded to defendant's second chapter 93A demand letter dated March 7, 2014. (Docket Entry ## 62-10, 62-11). In the response, plaintiff's counsel stated, "With respect to the allegations and claims asserted in the Letter against BSI and HMC, it is BSI and HMC's position that said claims are time barred and/or without merit." (Docket Entry # 62-11, p. 2). Additionally, on or about July 24, 2015, defendant was served with a subpoena duces tecum requiring defendant to appear at the offices of plaintiff's counsel for a deposition. (Docket Entry # 62-2).

Separately, defendant filed for chapter 7 bankruptcy in the Southern District of New York in 2010. (Docket Entry # 62, p. 4, ¶ 20) (Docket Entry # 62-13). In November 2010, defendant signed a chapter 7 statement of her intent to retain the property and reaffirm the debt owed to Bank of America. (Docket Entry # 62-17). She obtained a final decree releasing her "all dischargeable debts" in March 2011. (Docket Entry ## 62-15, 62-16).

Furthermore, in regard to the issues surrounding the location of her permanent residency, defendant stated that she

29

did not possess a Massachusetts driving license, nor was she registered to vote in the Commonwealth.  (Docket Entry ## 62-18, 62-20).  Defendant also stated that she had been living in New York since 1972 and had been registered to vote in New York since before 1992.  (Docket Entry ## 62-19, 62-21).

From 2010 until 2014, defendant filed multiple "Massachusetts Nonresident/Part-Year Resident Income Tax Return" forms and listed her New York property as her home address. (Docket Entry ## 62-23, 62-24, 62-25, 62-26, 62-27, 62-28, 62-29).  Her deposition concluded on August 21, 2015 so that she could gather the rest of her financial records stored in New York.  (Docket Entry # 62-30).

Finally, the foreclosure deed sets out the chain of title through the aforementioned assignments and plaintiff's purchase of the property at the public auction.  As set forth in the deed, plaintiff granted the property to plaintiff for the sum of $675,000.  (Docket Entry # 63-11).  The deed was registered with the Nantucket County Land Court. (Docket Entry # 11-16).  The total debt owed under the Conley note at the time of the March 7, 2014 foreclosure sale was $995,868.27.  (Docket Entry # 63, ¶ 36).

DISCUSSION

A.   Plaintiff's Acquisition of Title Pursuant to Lawful
     Foreclosure

In seeking summary judgment, plaintiff initially raises a series of arguments regarding the validity of the foreclosure sale and its acquisition of title to the property as well as its standing to foreclose and defendant's lack of standing to challenge various aspects of the foreclosure.[11]  Defendant argues that the foreclosure was invalid and that defendant has met her burden to defeat summary judgment by demonstrating defects in the chain of assignments for the mortgage and plaintiff's failure to comply with sections 35A, 35B and 35C of chapter 244 as well as paragraph 22 of the mortgage.

Before addressing these arguments, it is worth recounting the general parameters of Massachusetts foreclosure law and statutes regarding the power of sale.  A valid statutory foreclosure must strictly comply with the terms of the mortgage and the relevant statutes relating to foreclosure by exercise of a power of sale, including section 21 of Massachusetts General Laws chapter 183 ("chapter 183"), which sets out the statutory power of sale, and sections 11 to 17C of chapter 244.  See Eaton v. Fed. Nat'l Mortg. Ass'n, 969 N.E.2d 1118, 1128 (Mass. 2012); United States Bank Nat'l Ass'n v. Ibanez, 941 N.E.2d 40, 50 (Mass. 2011).  In addition, "Massachusetts does not require a

---

[11]  Plaintiff captions the arguments under a global heading that it "acquired title to the Property pursuant to its lawful foreclosure sale."   (Docket Entry # 60, p. 4).

mortgage holder to obtain judicial authorization to foreclose on a mortgaged property." United States Bank Nat'l Ass'n v. Ibanez, 941 N.E.2d at 49; see Mass. Gen. L. ch. 183, § 21. If the mortgagor is not a beneficiary of the Servicemembers Act, a mortgage holder can foreclose on the property by exercise of the statutory power of sale, if such power is granted by the mortgage itself. See United States Bank Nat'l Ass'n v. Ibanez, 941 N.E.2d at 49. There is no genuine dispute that defendant is not subject to the benefits of the Servicemembers Act and, as stated above, the Land Court already determined that defendant was not covered by the act. (Docket Entry # 11).

"[A]fter a mortgagor defaults in the performance of the underlying note, the mortgage holder may sell the property . . . and convey the property to the purchaser." Id. "Even where there is a dispute as to whether the mortgagor was in default or whether the party claiming to be the mortgage holder is the true holder, the foreclosure goes forward unless the mortgagor files an action and obtains a court order enjoining the foreclosure." Id.

Furthermore, "'no sale under such power shall be effectual to foreclose a mortgage, unless, previous to such sale,' advance notice of the foreclosure sale has been provided to the mortgagor, to other interested parties, and by publication in a newspaper published in the town where the mortgaged land lies or

of general circulation in that town." Id. at 50 (quoting

chapter 244, section 14).  The facts demonstrate that on three

different dates, February 6, 13 and 20, 2014, plaintiff

published a notice of the foreclosure sale in the *Nantucket*

*Inquirer and Mirror*.  (Docket Entry # 62-7).  Inasmuch the

foreclosure sale did not take place until March 7, 2014,

plaintiff showed strict compliance with the statutory

requirement that notice of sale be published "in a Newspaper of

general circulation for three consecutive weeks not less than 21

days prior to the foreclosure sale."[12]  (Docket Entry # 62-7).

Moreover, in order for a foreclosure to be valid, "the

foreclosing entity must hold the mortgage at the time of the

notice and sale,"[13] Ibanez, 941 N.E.2d at 53, and hold both the

mortgage and the note "at the time it commences foreclosure."

Sullivan v. Kondaur Capital Corp., 7 N.E.3d 1113, 1119

(Mass.App.Ct.), review denied, (Mass. 2014); accord Culhane v.

Aurora Loan Servs. of Nebraska, 708 F.3d 282, 293 n.7 (1st Cir.

2013) (must hold note "at the time of foreclosure") (citing

Eaton v. Fed. Nat'l Mortg. Ass'n, 969 N.E.2d at 1125-31, 1132

n.27).  "A foreclosing entity may provide a complete chain of

---

[12]  Defendant does not challenge the foreclosure on the basis of
a failure to provide the statutory notice.
[13]  Here, the last assignment of the Conley mortgage was in May
2013 which is prior to the February 2014 notice.  Plaintiff
and/or its counsel also held the Conley note prior to the
February 2014 notice.

assignments linking it to the record holder of the mortgage, or a single assignment from the record holder of the mortgage." United States Bank Nat'l Ass'n v. Ibanez, 941 N.E.2d at 53. When the note and mortgage are held separately, the "mortgagee holds bare legal title to the mortgaged premises, defeasible upon repayment of the loan (because the mortgagor owns the equity of redemption)" and the holder of the note holds the beneficial interest in the mortgaged property.  Culhane v. Aurora Loan Servs. of Nebraska, 708 F.3d at 292 (internal citation omitted).

In seeking summary judgment, plaintiff submits it had standing to foreclose and conducted a lawful foreclosure in compliance with Massachusetts law.  (Docket Entry # 60). Defendant argues inter alia that certain defects in the Conley mortgage chain of assignments, the lack of factual allegations supporting the transfer of the Conley note and additional defects in the foreclosure process make the foreclosure sale invalid.  (Docket Entry # 68).  Plaintiff, therefore, lacked the standing to foreclose on the property, according to defendant. (Docket Entry # 68).

(1) Standing to Challenge Foreclosure

Plaintiff initially argues that it established lawful standing to foreclose on the property due to its strict compliance with Massachusetts statutory law.  (Docket Entry #

60).  Furthermore, plaintiff asserts that defendant's standing

to challenge the mortgage assignments and the foreclosure is

limited.  (Docket Entry # 60).  Defendant responds by arguing

that defendant does have standing to challenge the foreclosure

to the extent that it is not valid.  (Docket Entry # 68).

Defendant asserts that chapter 183, section 54B does not prevent

defendant from challenging the validity of the mortgage

assignments.  (Docket Entry # 68).  Furthermore, defendant

asserts that "'[i]n the absence of a valid written assignment of

a mortgage or a court order of assignment, the mortgage holder

remains unchanged.'"  (Docket Entry # 68) (quoting United States

Bank Nat'l Ass'n v. Ibanez, 941 N.E.2d at 54).

     "[I]n Massachusetts, a mortgagor has a legally cognizable

right to challenge a foreclosing entity's status qua mortgagee.

This may, in certain instances, require challenging the validity

of an assignment that purports to transfer the mortgage to a

successor mortgagee."  Culhane v. Aurora Loan Servs. of

Nebraska, 708 F.3d at 291.  However, a mortgagor only has

standing to challenge a mortgage assignment as invalid,

ineffective, or void in order to refute an assignee's status qua

mortgagee.  See id.  Furthermore, "a mortgagor does not have

standing to challenge shortcomings in an assignment that render

it merely voidable at the election of one party but otherwise

effective to pass legal title."  Id.  "A deficiency in an

assignment" of a mortgage "that makes it merely voidable at the election of one party or the other would not automatically invalidate the title of a foreclosing mortgagee, and accordingly would not render void a foreclosure sale conducted by the assignee or its successors in interest."  Sullivan v. Kondaur Capital Corp., 7 N.E.3d at 1116 n.7.

Plaintiff concedes that defendant has standing to challenge mortgage assignments that are void, such as when an assignor "had nothing to assign" or had no authority to make an assignment to a particular entity.  (Docket Entry # 60, p. 7) (citing Culhane v. Aurora Loan Servs. of Nebraska, 708 F.3d at 291).  Under Massachusetts law, defendant may raise challenges that make an assignment of the Conley mortgage void under Massachusetts statutory and common law.  See Culhane v. Aurora Loan Servs. of Nebraska, 708 F.3d at 291.  Defendant, however, lacks standing to bring technical challenges that could merely make the mortgage assignment *voidable* at the election of one party or another.  See id.  Plaintiff's characterization of defendant's standing to challenge the assignment of the mortgage and note is therefore correctly described by the plaintiff as "limited."  (Docket Entry # 60).

(2) Validity of Assignment

In regard to the validity of assignment, plaintiff asserts that the chain of assignments of the mortgage is proper thus

giving it a proper basis to foreclose on the property as a matter of law. (Docket Entry # 60). Plaintiff submits that the assignments of the Conley mortgage are presumptively valid and binding under section 54B. (Docket Entry # 60). Defendant contests the validity of the assignments on the basis that plaintiff fails to show a proper chain of title for the Conley mortgage. (Docket Entry # 68). Additionally, defendant maintains that the assignments were not properly notarized and the assignors did not have proper authority to assign the mortgage. (Docket Entry # 68, § IV(5)). Defendant argues that "critical parties" were never "MERS members," and therefore lacked authority to properly grant an assignment of the mortgage. (Docket Entry # 68, § IV(5)).

Section 54B provides in pertinent part:

> [An] assignment of mortgage . . . if executed before a notary public, . . . by a person purporting to hold the position of president, vice president, treasurer, clerk, secretary, cashier, loan representative, principal, investment, mortgage or other officer, agent, asset manager, or other similar office or position, . . . of the entity holding such mortgage, or otherwise purporting to be an authorized signatory for such entity . . . shall be binding upon such entity and shall be entitled to be recorded . . ..

Mass. Gen. L. ch. 183, § 54B. By adhering to the requirements of this statute, an assignor establishes a proper, binding assignment of the mortgage from one entity to another. See Culhane v. Aurora Loan Servs. of Nebraska, 708 F.3d at 293-294. As long as the

assignment comported "with the requirements of" section 54B, "it was 'otherwise effective to pass legal title' and cannot be shown to be void." Bank of New York Mellon Corp. v. Wain, 11 N.E.3d 633, 638 (Mass.App.Ct. 2014); accord ClearVue Opportunity XV, LLC v. Sheehan, 2015 WL 5098658, at *6 (Mass.App.Div. Aug. 24, 2015) (quoting Bank of New York Mellon Corp. v. Wain, 11 N.E.3d at 638). As a homeowner and mortgagor in default seeking to defeat summary judgment on the basis of an invalid assignment in a post-foreclosure action, plaintiff cannot challenge the assignment based on "latent defects in the assignment process." Bank of New York Mellon Corp. v. Wain, 11 N.E.3d at 638.

Under the terms of the statute, a binding assignment requires an executed mortgage assignment, before a notary public, by an individual with authority to bind the respective assignor. See Mass. Gen. L. ch. 183, § 54B; see Culhane v. Aurora Loan Servs. of Nebraska, 708 F.3d at 294 ("assignment of the mortgage from MERS to Aurora adhered to" the requirements of section 54B because "it was signed by Joann Rein (an individual duly certified as a vice president of MERS) and thereafter notarized").

Defendant challenges the notarization because it "fails to identify that the signor executed the assignment as their [sic] free act and deed and the document cannot therefore be lawfully recorded as required under M.G.L. c. 183, § 4, 29 and 30." (Docket Entry # 68, p. 12). Defendant explicitly challenges the

initial assignment of the mortgage from MERS to J.P. Morgan.
(Docket Entry # 68, p. 12) (citing only Docket Entry # 63-6).

The statute simply requires an "assignment of [the]
mortgage . . . executed before a notary public . . ., whether
executed within or without the commonwealth."  Mass. Gen. L. ch.
183, § 54B.  In rejecting an argument that an individual
executed the assignment as a vice president of MERS when his
"primary occupation" was as an employer of the servicer and his
vice president designation "was put in place purely as a matter
of administrative convenience," the First Circuit in Culhane
explained that section 54B does not place restrictions on who
can serve as an officer of the assignor corporation.  Culhane v.
Aurora Loan Servs. of Nebraska, 708 F.3d at 294.  Likewise,
section 54B does not place a restriction requiring a recitation
that the signor of the MERS assignment, a vice president of MERS
identified as Rose Dinglasan ("Dinglasan"), execute the
assignment as her free will and deed.  The notarization of the
initial assignment from MERS to J.P. Morgan recited that
Dinglasan, the signor executing the assignment as vice president
of MERS, personally appeared before the Notary Public and
acknowledged that she executed the assignment in her authorized
capacity.  (Docket Entry # 63-6).  The assignment was in fact
recorded and the failure to include the "free act and deed"
language does not contravene section 54B which, in turn, states

that an assignment "shall be entitled to be recorded."[14]  Mass.
Gen. L. ch. 183, § 54B; see, e.g., Bank of New York Mellon Corp.
v. Wain, 11 N.E.3d at 638 ("the formal assignment here recited
that the person signing on behalf of MERS was a vice-president
of that company, and that the assignment included an attestation
that the signatory personally appeared and executed the document
before a notary public" and thus satisfied section 54B);
Campbell v. Federal National Mortgage Association, 2015 WL
5869510, at *9 n.25 (Mass. Land Ct. Oct. 6, 2015) (rejecting
argument that failure to include "free act and deed" language in
assignment's notary acknowledgment violated section 54B and
rendered assignment invalid).

        Plaintiff otherwise presents sufficient evidence to show
that the assignments of the mortgage from MERS to J.P. Morgan,
to Cam V Trust, and then to plaintiff solely in its capacity as
separate trustee of CAM V Trust complied with section 54B.
(Docket Entry # 63, Ex. F, G, & H).  As noted, the first
assignment of the Conley mortgage from MERS, as nominee of
American Home Mortgage, to J.P. Morgan was executed and signed
by a MERS vice president, witnessed and signed by the Notary
Public.  (Docket Entry # 63, Ex. F).  The assignments of the
Conley mortgage from J.P. Morgan to CAM V Trust, and from CAM V

---

[14]  The foreclosure deed does contain "the free act and deed"
language.  (Docket Entry # 63-11, p. 1).

Trust to plaintiff, were executed in a similar fashion and
constitute valid assignments under section 54B.  (Docket Entry #
63, Ex. G & H).  The initial assignment identifies MERS as the
assignor and it is signed by an individual designated as the
vice president of MERS.  Section 54B, which relaxes the formal
requirements for transferring an interest in land by a
corporation executed by an individual officer, see Sullivan v.
Kondaur Capital Corp., 7 N.E.3d at 1120, simply requires
mortgage assignments to be executed by an individual "purporting
to hold the position of . . . vice president."  Mass. Gen. L.
ch. 183, § 54B; accord Sullivan v. Kondaur Capital Corp., 7
N.E.3d at 1120.[15]  The initial assignment by MERS was notarized
and recorded at the Nantucket County Registry of Deeds.  On its
face, it complies with section 54B, the statute that governs
mortgage assignments in Massachusetts.  The terms of section 54B
do not require the assignment to recite the authority of MERS
from its principal.  Under the mortgage, MERS was the nominee of
the lender and the lender's assigns as well as the mortgagee.
The terms of the mortgage therefore endowed MERS with the
authority to assign the mortgage to J.P. Morgan.  See Culhane v.

---

[15]  In contrast to the initial assignment by MERS in this case,
the signature in the challenged assignment in Sullivan did not
purport to be signed by an officer of the assignor identified in
the assignment.  See Sullivan v. Kondaur Capital Corp., 7 N.E.3d
at 1119-1121.

Aurora Loan Servs. of Nebraska, 708 F.3d at 293 (terms of
mortgage denoting MERS as nominee for Preferred and its
"'successors and assigns'" authorized MERS to transfer the
mortgage).  Defendant's argument that the "MERS assignment" has
a "fatal" defect because of a lack of authority from MERS'
purported principal (unidentified in the MERS assignment)"
(Docket Entry # 68, pp. 10-11) is factually incorrect as to the
existence of MERS' authority and section 54B does not require
the assignment to recite MERS' authority from its principal.

Defendant additionally contends that because "the parties
involved" in the transfers of the Conley mortgage (presumably
J.P. Morgan, CAM V Trust and plaintiff as separate trustee for
CAM V Trust) were not MERS members and had "no rights to 'use'
the MERS 'system'" (Docket Entry # 68, pp. 10-12), the
assignments are void.  Except for outlining the rules for MERS
and the tracking of notes in the MERS electronic system,
defendant provides no legal authority that membership in MERS is
required for the assignees downstream of the first MERS
assignment where, as here, MERS was not an assignor or assignee
of the subsequent assignments.

Overall, it is true that defendant has the ability to
challenge an assignment as void because, for example, the
assignor "had no authority to make an assignment to a particular
assignee."  Culhane v. Aurora Loan Servs. of Nebraska, 708 F.3d

at 291; see <u>Sullivan v. Kondaur Capital Corp.</u>, 7 N.E.3d at 1116
(mortgagor may challenge mortgage assignment as void on the
basis that foreclosing entity lacked legal authority to conduct
the foreclosure).  "Absent a provision in the mortgage
instrument restricting transfer," however, "a mortgagee may
assign its mortgage to another party."  <u>Culhane v. Aurora Loan</u>
<u>Servs. of Nebraska</u>, 708 F.3d at 292.  Under the language of the
mortgage, plaintiff was the borrower and MERS was acting for the
lender, American Home Mortgage, and the lender's "successors and
assigns."  (Docket Entry # 63-2).  The mortgage allowed a
transfer of rights in the property and states that the borrower
mortgages and conveys to MERS and the assignees of MERS, such as
J.P. Morgan, the power of sale.  (Docket Entry # 63-2, p. 3).
The mortgage defines MERS as "mortgagee" as well as "a nominee"
of American Home Mortgage and its successors and assigns.
(Docket Entry # 63-2, p. 1).  As mortgagee, MERS held legal
title to the property.  See <u>Culhane v. Aurora Loan Servs. of</u>
<u>Nebraska</u>, 708 F.3d at 286 (interpreting similar language in
mortgage that "MERS, as mortgagee of record, held legal title to
the mortgaged premises").  Where, as here, there was no
restriction in the mortgage prohibiting a transfer, MERS, on
behalf of American Home Mortgage, could transfer the mortgage to
another party, J.P. Morgan.  See <u>id.</u> at 292 (absent "provision
in the mortgage instrument restricting transfer . . . a

mortgagee may assign its mortgage to another party"). MERS therefore had the authority to transfer the legal title to the mortgaged property to J.P. Morgan. The MERS assignment dated February 8, 2012, is made by Dinglasan, a vice president of MERS, as opposed to any servicer. The assignment complied with section 54B and defendant's argument that a number of servicers were not MERS members[16] does not render the MERS assignment void. See, e.g., Armand v. Homecomings Fin. Network, 2012 WL 2244859, at *5 (D.Mass. June 15, 2012) (complaint fails to state claim for relief because it does not allege non-compliance with section 54B "but only that Mr. Harmon lacked authority to sign the assignment on behalf of MERS").

The downstream assignments by J.P. Morgan to CAM V Trust and then to plaintiff did not involve MERS. In any event, the lack of MERS' membership does not render the assignments, both of which comply with section 54B, void. See id.; see generally Galvin v. United States Bank Nat'l Ass'n, 2015 WL 1014549, at *2 (D.Mass. Mar. 9, 2015) ("that the mortgage and the assignment

---

[16] Specifically, for purposes of summary judgment, the facts include that, "Between August 15, 2006 and August 15, 2012," the "Conley mortgage loan was serviced, first by American Home Mortgage Servicing, Inc., ('AHMSI'), then 'Marix Servicing, LLC' ('Marix') and later by Residential Credit Solutions, Inc. ('RCS')." (Docket Entry # 27, ¶ 18, p. 11) (Docket Entry # 28, ¶ 18, p. 4). "Neither AHMSI, Marix, nor RCS were ever MERS members." (Docket Entry # 27, ¶ 19, p. 11) (Docket Entry # 28, ¶ 19, p. 4).

violated MERS rules, rests on an infirmity that, at best, might render the transactions voidable by MERS members, but it does not make them void"). Defendant's argument that these entities were not MERS members or that a servicer was not a MERS member does not render the assignments void or non-compliant with section 54B. Rather, the assignments were not only properly recorded at the Nantucket County Land Court, but were signed by the proper entity with the proper authority and effectively notarized. (Docket Entry # 63, Ex. F, G & H). In short, the assignments comply with section 54B and are both binding and "entitled to be recorded." Mass. Gen. L. ch. 183, § 54B; see Kiah v. Aurora Loan Services, LLC, 2011 WL 841282, at *7 (D.Mass. March 4, 2011) ("clear language of § 54B provides that the assignment would be binding"). Defendant's argument that plaintiff failed to show that it lawfully obtained the Conley mortgage in compliance with the decision in Eaton is unavailing.

As a final matter, defendant's one sentence argument, without any legal citation, that plaintiff did not provide proof that any consideration was paid for the Conley note such that it can allege damages "even if Conley's debt had not been discharged in a Chapter 7 bankruptcy" (Docket Entry # 68, p. 13) is not adequately developed and therefore waived. See O'Connell v. Marrero-Recio, 724 F.3d 117, 124 (1st Cir. 2013); Coons v. Industrial Knife Co., Inc., 620 F.3d 38, 44 (1st Cir. 2010)

("district court was 'free to disregard' the state law argument that was not developed in Coons's brief"); see also U.S. v. Caparotta, 676 F.3d 213, 218 (1st Cir. 2012) ("argument consist[ing] of just two sentences and two cursory citations in his brief . . . is therefore waived").

    (3) Possession of Mortgage Note

Defendant also argues that plaintiff did not meet its burden to demonstrate it was the holder of the Conley note. (Docket Entry # 68).  Defendant further asserts that plaintiff did not effectively trace the passing of the note and how plaintiff was able to obtain it.  (Docket Entry # 68).  She contends "there is nothing" to show how the "note got from American Home Mortgage to Chase or from CAM V Trust to Plaintiff."  (Docket Entry # 68).

First, plaintiff refutes these argument by presenting a copy of the Conley note itself, an affidavit describing when plaintiff became an authorized agent of the actual noteholder, an affidavit stating that plaintiff is currently in possession of the note itself and a bailee letter indicating that plaintiff had turned the note over to counsel.  Second, as previously explained, Eaton only requires the foreclosing entity or its agent to hold the note at the time it commences foreclosure. See Sullivan v. Kondaur Capital Corp., 7 N.E.3d at 1119; accord Culhane v. Aurora Loan Servs. of Nebraska, 708 F.3d at 293; see

also Eaton v. Fed. Nat'l Mortg. Ass'n, 969 N.E.2d at 1131
("[t]here is no applicable statutory language suggesting that
the Legislature intended to proscribe application of general
agency principles in the context of mortgage foreclosure
sales").  Massachusetts is a title theory state such that "a
mortgage and the underlying note can be split."  Eaton v. Fed.
Nat'l Mortg. Ass'n, 969 N.E.2d at 1124.  As stated in Culhane,
"The SJC has made clear that it is only at the time of
foreclosure that a mortgagee must also hold or control the
beneficial interest in the loan."  Culhane v. Aurora Loan Servs.
of Nebraska, 708 F.3d at 293 n.7.  Furthermore, the relevant
power of sale foreclosure statutes, namely, sections 11 to 17C
of chapter 244 and section 21 of chapter 183, "permit one who,
although not the note holder himself, acts as the authorized
agent of the note holder, to stand 'in the shoes' of the
'mortgagee' as the term is used in these [statutory]
provisions."  Eaton v. Fed. Nat'l Mortg. Ass'n, 969 N.E.2d at
1131.

Here, the effect of the Eaton decision is that a
foreclosing mortgagee is now required to demonstrate ownership
of the debt secured by the mortgage.  See Sullivan v. Kondaur
Capital Corp., 7 N.E.3d at 1118.  Prior to Eaton, "a foreclosing
mortgagee was not required to demonstrate ownership of the debt
secured by the mortgage" because "the note typically" was "not

47

recorded." Id. In this case, plaintiff must show that it was "'either holding the mortgage note or acting on behalf of the note holder' at the time the power of sale is exercised." Rice v. Wells Fargo Bank, N.A., 2 F.Supp.3d 25, 33 (D.Mass. 2014). One way for the foreclosing entity to "establish that it either held the note or acted on behalf of the note holder at the time of a foreclosure sale [is] by filing an affidavit in the appropriate registry of deeds pursuant to G.L. c. 183, § 5B." Eaton v. Fed. Nat'l Mortg. Ass'n, 969 N.E.2d at 1133 n.28. Plaintiff may therefore rely on an affidavit filed in the appropriate registry of deeds under chapter 183, section 5B, to establish that it either held the Conley note or an authorized agent of plaintiff held the Conley note. See Rice v. Wells Fargo Bank, N.A., 2 F.Supp.3d at 33; see also Mass. Gen. L. ch. 183, § 5B (affidavit that is "relevant to the title to certain land and will be of benefit and assistance in clarifying the chain of title" can be used to evidence possession of mortgage note). As indicated above, this is but one of a number of ways that a foreclosing party may utilize to evidence that it holds the mortgage note. See Rice v. Wells Fargo Bank, N.A., 2 F.Supp.3d at 33.

Plaintiff submitted the noteholder affidavit filed at the appropriate registry, namely, at the Nantucket County Land Court. (Docket Entry # 62-6). The affidavit certified that

"the requirements of chapter 244, section 35B have been complied with" and that "the foreclosing entity is the authorized agent of the holder of the promissory note, for purposes, *inter alia*, of foreclosing said mortgage on behalf of said note holder." (Docket Entry # 62-6).  The affidavit was signed and dated on December 17, 2013.  (Docket Entry # 62-6).  As also explained in depth in the factual background, HMC as CAM Mortgage was the holder of the original Conley note as of June 26, 2013, at which time it tendered the note to its counsel and agent, DG&L, to retain possession on its behalf.  At all times thereafter, DG&L retained possession of the note and HMC as CAM Mortgage retained ownership of the note and the authority to request its return.

The date of the noteholder affidavit (December 17, 2013) precedes the mandatory notice of sale date (February of 2014) and therefore complies with the SJC's ruling in Eaton.  See Eaton v. Fed. Nat'l Mortg. Ass'n, 969 N.E.2d at 1131.  Along with Longoria's supplemental affidavit and the bailee letter, it establishes that plaintiff owned the note which was in the possession of plaintiff's agent, DG&L.  Plaintiff or its agent was thus the holder of the Conley note.  (Docket Entry # 62-6).  As previously noted, although the foreclosing party must generally possess the note to foreclose, principles of agency allow the foreclosing party to foreclose "as the agent of the note holder."  Eaton v. Fed. Nat'l Mortg. Ass'n, 969 N.E.2d at

49

1129 n.20 & 1131; accord Galiastro v. Mortg. Elec. Registration
Sys., Inc., 4 N.E.3d 270, 276 & 277 n.15 (Mass. 2014)
(foreclosure effectuated through statutory power of sale
"requires the mortgagee to hold the note or to act on behalf of
the note holder").  Finally, the McCarthy affidavit also states
that plaintiff "is the current holder of the Conley Note."
(Docket Entry # 63, ¶ 16).  Thus, when the foreclosure took
place on March 7, 2014, plaintiff (or its authorized agent,
DG&L) was the holder of the Conley note.  Defendant's arguments
regarding possession of the Conley note therefore do not avoid
summary judgment.

    (4)  Notice of Right to Cure

    Plaintiff asserts that the 35A letter, i.e., the notice of
the right to cure letter, fully complied with section 35A and is
therefore legally valid.  (Docket Entry # 60).  Plaintiff
submits that defendant's challenge to the 35A letter fails
because at the time the 35A letter was sent to defendant,
plaintiff was already the mortgagee of record and the holder of
the Conley note.  (Docket Entry # 60).  Furthermore, plaintiff
contends that despite any possible defect in the 35A letter, it
does not make the notice void because section 35A is not one of
the statutes relating to the statutory power of sale under
Massachusetts law.  (Docket Entry # 60).  Defendant responds by
arguing that the notice of the right to cure does not meet the

statutory requirements of section 35A because it was not sent to defendant by plaintiff, but rather by plaintiff's loan servicer and there is no showing that BSI had the "right to act on behalf of Plaintiff." (Docket Entry # 68, p. 7).[17]

Under Massachusetts law, section 35A of chapter 244 "gives a mortgagor of residential real property in the Commonwealth a ninety-day right to cure a payment default before foreclosure proceedings may be commenced." United States Bank Nat'l Ass'n v. Schumacher, 5 N.E.3d 882, 884 (Mass. 2014). "The underlying purpose of § 35A strongly suggests that a homeowner's right to cure a default is not the first step in terminating the mortgagor's rights." Id. at 889-890. "To the contrary, § 35A is designed to give a mortgagor fair opportunity to cure a default before the debt is accelerated and before the foreclosure process is commenced through invocation of the power of sale." Id. at 890. "A homeowner's right to cure a default is a preforeclosure undertaking that, when satisfied, eliminates the default and wholly precludes the initiation of foreclosure proceedings in the first instance, thereby protecting and preserving home ownership." Id.

---

[17] Defendant's primary argument is not based on section 35A but, rather, on the terms of the mortgage which require the "Lender" to send the notice. (Docket Entry # 68, § IV(1)(a)).

The Schumacher court therefore held that section 35A "is not one of the statutes 'relating to the foreclosure of mortgages by the exercise of a power of sale'" within the meaning of the statutory power of sale in section 21 of chapter 183. Id.; accord Pinti v. Emigrant Mortg. Co., Inc., 33 N.E.3d 1213, 1223-24 (Mass. 2015) (discussing the holding in Schumacher). Accordingly, insofar as defendant submits that a defect in the 35A letter renders the foreclosure void, the argument lacks merit. The record otherwise fails to show a genuinely disputed material fact that the section 35A error, if any, including the alleged discrepancy in payoff amounts,[18] "rendered the foreclosure so fundamentally unfair that defendant is entitled to" the equitable relief in the form of setting aside the foreclosure sale. United States Bank Nat'l Ass'n v. Schumacher, 5 N.E.3d at 891; see, e.g., Federal Nat'l Mortg. Ass'n v. Rogers, 2015 WL 2000845, at *3 (Mass.App.Div. April 7, 2015).

(5) Paragraph 22

Defendant submits that plaintiff failed to adhere to paragraph 22 of the Conley mortgage because BSI, as opposed to the "Lender" in the original mortgage (American Home Mortgage),

---

[18] Defendant argues that the payoff amounts in the letter did not match "the payoff amounts subsequently provided" thus rendering the notice of default/section 35 letter (Docket Entry # 63-9) "fundamentally unfair." (Docket Entry # 68, p. 7).

sent the notice of the default to plaintiff.  (Docket Entry #
68, pp. 3-7).  Relying on Pinti v. Emigrant Mortgage Co., Inc.,
33 N.E.3d at 1224 ("Pinti"), and Paiva v. Bank of N.Y. Mellon,
120 F.Supp.3d 7 (D.Mass. 2015) ("Paiva"), defendant contends
that the Pinti decision, decided on July 17, 2015, applies to
this case.  Plaintiff maintains that any defect in the notice of
default letter to comply with paragraph 22 did not render the
foreclosure sale void.  In addition, plaintiff asserts that the
decision in Pinti applies prospectively.

     The statutory power of sale in section 21 of chapter 183
requires compliance "with both 'the terms of the mortgage' and
with 'the statutes relating to the foreclosure of mortgages by
the exercise of a power of sale.'"  Pinti v. Emigrant Mortg.
Co., Inc., 33 N.E.3d at 1224.  Each requirement is "separately
grounded" and has "an independent meaning."  Id.  As discussed
previously, the phrase "statutes 'relating to the foreclosure'"
does not encompass section 35A.  United States Bank Nat'l Ass'n
v. Schumacher, 5 N.E.3d at 884.  Here, at issue is "the terms of
the mortgage," namely, paragraph 22.  See Eaton v. Fed. Nat'l
Mortg. Ass'n, 969 N.E.2d at 1127.

     The Massachusetts Supreme Judicial Court ("SJC") in Pinti
held that a failure to strictly comply with the notice of
default required in paragraph 22 of a mortgage renders the
foreclosure sale void.  Pinti v. Emigrant Mortg. Co., Inc., 33

N.E.3d at 1224 ("provisions of paragraph 22 constitute 'terms of the mortgage' governing the power of sale, and that, in order to conduct a valid foreclosure, Emigrant was obligated to comply strictly with paragraph 22's notice of default provisions"). The SJC also:

> conclude[d] that in this case, because of the possible impact that our decision may have on the validity of titles, it is appropriate to give our decision prospective effect only:  it will apply to mortgage foreclosure sales of properties that are the subject of a mortgage containing paragraph 22 or its equivalent and for which the notice of default required by paragraph 22 is sent after the date of this opinion.

Id. at 1227.  The notice of default in this case was sent prior to Pinti on June 25, 2013.  (Docket Entry # 63-9).  The court in Pinti, however, left open the "the question [of] whether our holding in this case should be applied to any other class of cases pending on appeal."  Id. at 1227 n.25 (citing Galiastro v. Mortg. Elec. Registration Sys., Inc., 4 N.E.3d at 276-279).

The Massachusetts Appeals Court decided this open question in Aurora Loan Servs., LLC v. Murphy, 41 N.E.3d 751 (Mass.App.Ct. 2015).  Using the reasoning in Galiastro, the Aurora court extended Pinti to cases pending on appeal at the time the SJC issued the Pinti decision.[19]  See id. at 756-757.

---

[19]  The Aurora court also defined the category of cases that constituted cases pending on appeal as follows:

> As in Galiastro, cases that were pending on appeal when Pinti was released included those cases in which the case

Quoting the reasoning used by the SJC in _Galiastro_, the _Aurora_ court explained the inequities that provided the basis to extend _Pinti_ to cases pending on appeal at the time of the _Pinti_ decision when the paragraph 22 issue was raised and preserved:

> "'Where multiple cases await appellate review on precisely the same question, it is inequitable for the case chosen as a vehicle to announce the court's holding to be singled out as the "chance beneficiary" of an otherwise prospective rule.' _Ibid_. Here, Murphy should not be 'deprived of the benefit of . . . challenging the old rule,' nor deterred from challenging existing precedent merely because the SJC selected Pinti, and not Murphy, to announce and to clarify the terms and statutes requiring strict compliance."

_Aurora Loan Servs., LLC v. Murphy_, 41 N.E.3d at 756 (quoting _Galiastro_, 4 N.E.3d at 277).  The _Aurora_ court was careful not to "extend the _Pinti_ rule to cases pending in the trial court" because the SJC in _Pinti_ "already limited the _new_ rule's application 'to mortgage foreclosure sales of properties that are the subject of a mortgage containing paragraph 22 or its equivalent and for which the notice of default required by paragraph 22 is sent after July 17, 2015, the date of the _Pinti_ opinion.'"  _Aurora Loan Servs., LLC v. Murphy_, 41 N.E.3d at 756–

---

was docketed in this court before July 17, 2015, and this court had not yet issued a decision in the case.  See _Galiastro_, _supra_ at 167 n. 14, 4 N.E.3d 270.  Cases where we had issued a decision, and the litigants have filed a petition for further appellate review, will also be considered pending on appeal for purposes of the retroactive reach of _Pinti_.

_Aurora Loan Services, LLC v. Murphy_, 41 N.E.3d at 756 n.5.

57 (quoting <u>Pinti v. Emigrant Mortg. Co., Inc.</u>, 33 N.E.3d at 1226) (emphasis added and brackets omitted).

The federal district court case heavily relied upon and quoted by defendant, <u>Paiva</u>, overlooks this reasoning regarding the inequities of not applying the <u>Pinti</u> rule to cases *on appeal* that raise the same issue when the SJC selected Pinti, as opposed to other appellants, to announce the rule. Thus, employing the reasoning that it would be inequitable to deny Paiva (who raised the same argument) the benefits of the <u>Pinti</u> rule, the <u>Paiva</u> court applied the rule to a case pending *in the trial court*. Although the court acknowledged the SJC's decision to give the <u>Pinti</u> rule "only prospective effect," the court nonetheless declared a foreclosure void at the trial court level and, in addition, implicitly viewed the rule as an extension of existing precedent rather than a new and unexpected rule given prospective application. <u>Paiva v. Bank of New York Mellon</u>, 120 F.Supp.3d at 10. The relevant portion of <u>Paiva</u> quoted by defendant reads as follows:

> Given that BONYM purchased the Property in foreclosure, and that the Property has not changed hands to any third parties, the SJC's concern over the "possible impact that our decision may have on the validity of titles" is attenuated here. Additionally, the cross-motions for summary judgment were fully briefed before <u>Pinti</u> was issued on July 17, 2015. As Paiva was already advancing the same argument regarding strict compliance with the paragraph 22 requirements that the SJC adopted in <u>Pinti</u>, it would be inequitable to deny him the benefit of that decision. Further, the Court reads <u>Pinti</u> as a statutory

interpretation of the power of sale, G.L. c. 183, § 21, and an extension of the SJC's prior ruling in Ibanez, rather than a reversal of course.

Id.

As a federal court sitting in diversity, this court declines "to extend Massachusetts law beyond" its present reach. RFF Family Partnership, LP v. Ross, 814 F.3d 520, 535 (1st Cir. 2016); accord Braga v. Genlyte Group, Inc., 420 F.3d 35, 42 (1st Cir. 2005) ("'we must exercise considerable caution when considering the adoption of a new application' of state law that could 'expand [its] present reach'") (quoting Doyle v. Hasbro, Inc., 103 F.3d 186, 192 (1st Cir. 1996)).  The additional reasoning in Paiva that, because the mortgagee purchased the property at the foreclosure sale and "the Property has not changed hands to any third parties, the SJC's concern over the 'possible impact that our decision may have on the validity of titles' is attenuated here," Paiva v. Bank of New York Mellon, 120 F.Supp.3d at 10, does not provide an adequate basis to apply the Pinti rule to a case pending at the trial level where the notice of default pre-dated the Pinti decision.  Accordingly, with all due respect, this court declines to adhere to Paiva.[20]

See also Butler v. Deutsche Bank Trust Co. Americas, 748 F.3d

---

[20]  Defendant's reliance on Lyons v. Mortg. Elec. Registration Sys., Inc., 2013 WL 2420705 (Mass.App.Ct. June 5, 2013), does not advance her cause because the posture of that case "was on appeal at the time Eaton was decided."  Id. at * 1.

28, 38 (1ˢᵗ Cir. 2014) ("_Eaton_ applies to two sets of litigants: (1) those challenging foreclosures for which the notice of sale was given after June 22, 2012, and (2) those with wrongful foreclosure claims (predicated on the theory that the foreclosing entity did not possess their note) that were on appeal as of June 22, 2012" and, _as to all litigants' claims_ "_outside these closed sets, we apply the pre-Eaton rule_") (emphasis added).  Simply stated, the notice of default pre-dated the _Pinti_ decision and this case was not on appeal at the time _Pinti_ was decided.  Accordingly, the _Pinti_ rule does not apply.  See, e.g., _Buba v. Deutsche Bank Nat'l Trust Co. Americas_, 2016 WL 2626861, at *5 (D.Mass. May 6, 2016) (state district court "correctly noted that strict compliance under _Pinti_ was not required" because notices of default "were sent prior to the _Pinti_ decision" and SJC gave decision "'prospective effect only'" and the case was not "on appeal at the time _Pinti_ was decided").

Defendant also relies on _Paiva_ to establish that the provision in paragraph 22 requiring that the "Lender" in the original mortgage (American Home Mortgage) or the "Lender" at the time of the notice of default, rather than BSI, the purported servicer, must send the notice of default.  (Docket Entry # 68, p. 5).  Quoted by defendant, the relevant portion of _Paiva_ reads as follows:

The language of paragraph 22 is clear and unequivocal as to who must give the required notice of default to the borrower:  "Lender" must do so.  The Court agrees with Paiva that Countrywide's notice of default did not strictly comply with paragraph 22 of the mortgage, as required under the statutory power of sale and under the Massachusetts Supreme Judicial Court's ("SJC") case law.  See G.L. c. 183, § 21 (requiring a foreclosing bank to "comply with the terms of the mortgage"); U.S. Bank Nat. Ass'n v. Ibanez, 458 Mass. 637, 647, 941 N.E.2d 40 (2011) (the terms of the power of sale, G.L. c. 183, § 21, must be strictly adhered to); see also Pinti v. Emigrant Mortgage Company, Inc., 472 Mass. 226, 33 N.E.3d 1213, 1226 (2015) (strict compliance with the notice of default required by paragraph 22 is necessary in order for a foreclosure sale to be valid).

Paiva v. Bank of New York Mellon, 120 F.Supp.3d at 10.[21]  Paiva held that because a notice of default sent by the servicer as opposed to the lender "did not strictly comply with the requirements of paragraph 22 of the mortgage, the foreclosure sale is void."  Id.

It is true that paragraph 22 in the case at bar states that, "Lender shall give notice to Borrower" and then specifies the content of the notice and that the Conley mortgage defines "Lender" as American Home Mortgage.  Because the Conley mortgage extends the power of sale to MERS, as nominee for the "Lender and Lender's successors and assigns" (Docket Entry # 63-2), the term "Lender" necessarily includes the successor or assignee of the mortgage at the time of the notice of default, i.e., HMC as CAM Mortgage.  See Armand v. Homecomings Fin. Network, 2012 WL

---

[21]  Countrywide was the servicer at the time of the notice of default was sent.  Id.

2244859, at *5 (citing similar language to reject argument that "[m]ortgage permits only the Lender to invoke a statutory power of sale on the theory that" paragraph 22 "authorizes the 'Lender,' but not successors or assigns, to invoke the statutory sale remedy").

The majority view in this district does not adhere to the holding in Paiva.  See Anderson v. Nationstar Mortg., LLC, 2016 WL 1181661, at *3 (D.Mass. Mar. 25, 2016) (collecting cases). The issue in Anderson was "whether the actual 'lender' must send the notices of foreclosure and default to the borrower in order to 'strictly comply' with paragraph 22 of the mortgage instrument."  Id.  The cogent explanation in Anderson applies equally to the case at bar:

> Construing an identical mortgage provision to the one at issue here, the court in Galvin v. United States Bank National Ass'n held:  "Paragraph 22 does not require the lender to personally send the default notice."  No. 14-14723-RGS, 2015 WL 1014549, at *4 (D.Mass. Mar. 9, 2015). It ruled that even though the sender of the default notice was the loan servicer, "a plain reading of the mortgage" authorized the servicer to act on behalf of the lender. Id.; see also Armand v. Homecomings Fin. Network, No. 12-10457-LTS, 2012 WL 2244859, at *5 (D.Mass. June 15, 2012) (holding that language giving MERS the right to foreclose and sell the property plainly authorized MERS and MERS's successors to execute the power of sale); Fed. Nat'l Mortg. Ass'n v. Rogers, No. 13-ADM-10025, 2015 WL 2000845, at *4 (Mass.App.Div. Apr. 7, 2015) (ruling that when "the only claimed defect was that the notice to cure letters were given by the mortgage servicer," such a claim does not invalidate a foreclosure sale); Citibank, N.A. v. Glowack, No. 12 MISC 469108 (HPS), 2015 WL 9467349, at *6 (Mass.Land Ct. Dec. 23, 2015) (finding that "the giving of the notice of default by AHMSI, the loan servicer . . . may not serve

as a basis for determining the foreclosure sale . . . to be void"). <u>But</u> <u>see</u> <u>Paiva v. Bank of N.Y. Mellon</u>, 120 F.Supp.3d 7, 10 (D.Mass. 2015) (appeal pending) (invalidating a foreclosure sale where the loan "servicer" sent the default notice because "[t]he language of paragraph 22 is clear and unequivocal as to who must give the required notice of default to the borrower: Lender must do so").

<u>Anderson v. Nationstar Mortg., LLC</u>, 2016 WL 1181661, at *3.

Defendant further asserts that there is no evidence that BSI maintained any rights to enforce the Conley mortgage.  To the contrary, the record establishes that at the time of the notice of default and thereafter BSI was the servicer of the Conley mortgage and HMC as CAM Mortgage was the assignee of the lender and the foreclosing entity.  Accordingly, in light of the above, defendant's argument that plaintiff did not strictly comply with paragraph 22 because BSI, as opposed to the lender (HMC as CAM Mortgage), did not send the notice of default does not void the foreclosure sale.  <u>See</u> <u>ClearVue Opportunity XV, LLC v. Sheehan</u>, 2015 WL 5098658, at *12 & n.28 ("Sheehan cites to no authority indicating that the language of paragraph 22 must be interpreted to require the lender itself to send the acceleration notice" and "[w]e find none, and note that such a requirement would be impractical, as it would prohibit even counsel for the lender from sending such notices") (further noting that "holding in <u>Pinti</u> is explicitly prospective in its application").

(6) Section 35B

Defendant next maintains that she is entitled to the protections of section 35B because the property is her "principal residence" within the meaning of the statute.  See Mass. Gen. L. ch. 244, § 35B.  Defendant submits that the foreclosure sale is void because plaintiff failed to comply with section 35B.  Defendant also maintains that the Nantucket residence is her primary residence thereby entitling her to the protections of section 35B.  Plaintiff contends that section 35B does not apply because "the Conley Mortgage Loan is not 'a certain mortgage loan'" within the meaning of section 35B because it does not secure "'a mortgage on an owner-occupied residential property.'"  (Docket Entry # 60).  Plaintiff also argues that, even if section 35B applied, it compiled with the statute by adequately reviewing defendant's request for a modification, including performing a net present value analysis under FHA guidelines.

Section 35B states that a creditor "shall not cause publication of notice of a foreclosure sale, as required by section 14, upon certain mortgage loans unless it has first taken reasonable steps and made a good faith effort to avoid foreclosure."  Mass. Gen. L. ch. 244, § 35B.  On June 25, 2013, plaintiff sent a "Right to Request a Modified Mortgage Loan" letter to defendant, informing her that she was in default and

that she was eligible to request a loan modification. (Docket
Entry # 63, Ex. J). The letter was sent concurrently with the
notice mandated by section 35A, as required by the statute. See
Sullivan v. Bank of New York Mellon Corp., 2015 WL 1254889, at
*12; Mass. Gen. L. ch. 244, § 35B.

In addition, as stated in the McCarthy affidavit, as a good
faith effort to avoid foreclosure, plaintiff reviewed defendant
for a modification of her mortgage in November 2013. (Docket
Entry # 63). The affidavit also indicates that plaintiff
utilizes FHA guidelines when considering its borrowers for a
loan modification and that after employing these guidelines,
defendant was not qualified for a loan modification. (Docket
Entry # 63).

The McCarthy affidavit reflects that FHA guidelines for a
loan modification require a borrower's mortgage payment to not
be in excess of 31% of the borrower's verifiable monthly
average. (Docket Entry # 63). By using defendant's federal tax
returns from 2011 and 2012, plaintiff was able to establish
Conley's income. (Docket Entry # 63). After determining that
defendant's mortgage payment including principal, interest,
taxes, and insurance was 62.4% of her verifiable monthly income,
it was determined that she was disqualified from receiving a
loan modification under FHA guidelines. (Docket Entry # 63).
Finally, an officer of BSI certified that, after all of the loan

records were reviewed, the requirements of section 35B "have been complied with." (Docket Entry # 11-12). This thorough analysis to determine defendant's eligibility for a loan modification constitutes taking reasonable steps and making a "good faith effort" under section 35B. See Mass. Gen. L. ch. 244, § 35B. Due to the absence of evidence to the contrary that would create a genuine dispute of a material fact, this court finds that plaintiff complied with section 35B in regards to taking reasonable steps and making a good faith effort to avoid a foreclosure.[22]

Having addressed the various arguments raised by plaintiff regarding its acquisition of title to the property and established the validity of the foreclosure sale, this court turns to the particular counts in the amended complaint. In addition to addressing the foreclosure count (Count II), plaintiff's memorandum limits the discussion of the counts in the amended complaint to the breach of contract and possession claims in counts I and IV respectively.

Plaintiff thus fails to tailor its arguments to the causes of action in counts V and VI. As the summary judgment movant

---

[22] In light of the above, it is not necessary to address plaintiff's argument that section 35B does not apply because the mortgage loan was not secured by a mortgage on an "owner-occupied residential property" and, as such, is not a "certain mortgage loan" as defined by section 35B.

with the underlying burden of proof, plaintiff did not
articulate the elements for each claim in counts V and VI and
how the evidence supports each such element.  Plaintiff's global
assertion that it is entitled to summary judgment on all claims
in the amended complaint does not sufficiently specify the basis
for summary judgment as to the use and occupancy claim (Count V)
and the writ of assistance claim (Count VI).  Having neglected
to squarely spell out its argument by adequately addressing
these particular claims, summary judgment for these claims is
not appropriate.  See Int'l Longshoremen's Ass'n, AFL-CIO v.
Davis, 476 U.S. 380, 398 n.14 (1986) ("it is not our task *sua
sponte* to search the record for evidence to support" a party's
claims); Coons v. Indus. Knife Co., Inc., 620 F.3d at 44
("district court was 'free to disregard' the state law argument
that was not developed in Coons's brief").[23]

    With respect to Count II for foreclosure, the amended
complaint seeks a declaratory judgment that the "foreclosure
sale held on March 7, 2014, is valid" under the Declaratory
Judgment Act, 28 U.S.C. § 2201 ("DJA").[24]  (Docket Entry # 11, ¶¶

_____

[23]  Previously, this court declined to address the counts for
possession, use and occupancy and writ of assistance when
defendant moved to dismiss the amended complaint because, like
plaintiff, she did not tailor her arguments to address these
claims.  (Docket Entry # 47, pp. 33-34).
[24]  The paragraphs specific to the foreclosure count (Docket
Entry # 27, ¶¶ 34-42) do not cite to either the Declaratory
Judgment Act, 28 U.S.C. § 2201 ("section 2201"), or

1, 34-42).  The count alleges that plaintiff is the mortgagee of record, the holder of the Conley note, complied with section 35A and other foreclosure statutes and conducted the foreclosure sale in accordance with Massachusetts law.

The DJA gives a federal court the discretion to ''declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.''  28 U.S.C. § 2201(a) (''section 2201''); see Ernst & Young v. Depositors Economic Protection Corp., 45 F.3d 530, 534 (1st Cir. 1995) (DJA ''empowers a federal court to grant declaratory relief in a case of actual controversy''); accord Igartúa v. United States, 626 F.3d 592, 634 (1st Cir. 2010) (DJA provides redress for justiciable cases and actual controversies). The operation of the statute "'is procedural only.'"  Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950) (discussing section 2201).  By enacting section 2201, "Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction."  Id.  The DJA is therefore "not a grant of jurisdiction" and it "'merely defines the scope of available declaratory relief.'"  Watchtower Bible and Tract Soc'y of New York, Inc. v. Colombani, 712 F.3d 6, 11 (1st Cir. 2013); accord Buck v. American Airlines, Inc., 476 F.3d

---

Massachusetts General Laws chapter 231A.  The count, however, incorporates the prior paragraphs.  Paragraph one in the complaint relies on the DJA, 28 U.S.C. § 2201.

29, 33 n.3 (1st Cir. 2007) (explaining that DJA ''creates a remedy, not a cause of action'').

As stated in the foregoing discussion, the foreclosure sale is valid.  Exercising this court's discretion, declaratory relief in the form of a declaration that ''the foreclosure sale held on March 7, 2014 is valid'' is appropriate.  Having addressed Count II, this court turns to the claims in counts I, and IV.

A.  Breach of Contract Claim (Count I)

Plaintiff submits it established the essential elements of its breach of contract claim.  Plaintiff identifies the Conley note, executed and delivered to American Home Mortgage on August 15, 2006, as the valid contract in which defendant promised to pay monthly installments over a term of 30 years with interest. (Docket Entry # 60).  Plaintiff seeks to enforce its rights under the note and mortgage by foreclosing and selling the property to recover the debt owed to it.  (Docket Entry # 60). Defendant argues that plaintiff is not entitled to recover on the breach of contract claim because plaintiff or its predecessor assignees breached paragraph 22 of the Conley mortgage.  (Docket Entry # 68, p. 18).

To establish a breach of contract claim under Massachusetts law, "'the plaintiff must prove that a valid, binding contract existed, the defendant breached the terms of the contract, and the plaintiff sustained damages as a result of the breach.'" Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 232 (1st Cir.

2013) (internal brackets omitted).  The Conley note is a valid, binding contract.  Whereas the chapter 7 bankruptcy may indicate an inability to recover damages, it does not show that plaintiff did not sustain damages.  Defendant executed the note to American Home Mortgage in the amount of $800,000 and ownership, possession and control of the note was subsequently transferred to plaintiff.  Defendant secured the loan obligation with a mortgage on the property to MERS, as nominee for American Home Mortgage, which was subsequently assigned to J.P. Morgan, then to HMC as CAM V Trust, and finally to plaintiff.  Defendant defaulted on her obligation to pay the amount due by, inter alia, failing to pay the amount due for the October 1, 2009 payment.  She therefore breached the material terms of the Conley note.  At the time of the foreclosure, the total amount due and owing on the Conley note totaled $995,868.27.  (Docket Entry # 63, ¶ 36).  The property was sold for $675,000. Plaintiff sustained these damages as a result of defendant's breach of the note by failing to pay the amounts owed.[25]

With plaintiff having established the elements of its breach of contract claim, defendant raises two arguments. First, she submits there was no contract because plaintiff never obtained ownership of the Conley mortgage and Conley note.  As

---

[25]  Plaintiff is not seeking a deficiency judgment in light of the chapter 7 bankruptcy.  (Docket Entry # 60, p. 16).

already discussed, plaintiff established a proper chain of title to the mortgage and either plaintiff or its counsel possessed the Conley note at the relevant time.  The argument therefore fails to provide a means to avoid summary judgment.

Second, defendant asserts that plaintiff's breach of paragraph 22 bars its recovery.  It is well established that, "'A material breach by one party excuses the other party from further performance under the contract.'"  Teragram Corp. v. Marketwatch.com, Inc., 444 F.3d 1, 11 (1st Cir. 2006) (internal brackets omitted).  "[A] material breach of an agreement occurs when there is a breach of 'an essential and inducing feature of the contract.'"  Lease-It, Inc. v. Massachusetts Port Authority, 600 N.E.2d 599, 602 (Mass.App.Ct. 1992) (quoting Bucholz v. Green Brothers Co., 172 N.E. 101, 102 (Mass. 1930)); accord Teragram Corporation v. Marketwatch.com, Inc., 444 F.3d at 11 (also quoting Bucholz); Duff v. McKay, 52 N.E.3d 203, 211 (Mass.App.Ct. 2016).  Summary judgment is not appropriate on the issue of materiality unless the evidence "'admits of only one reasonable answer.'"  See Teragram Corp. v. Marketwatch.com, Inc., 444 F.3d at 11.

Here, defendant fails to provide facts that plaintiff committed a material breach of paragraph 22.  BSI sending the notice of default as opposed to the "Lender," America Home Mortgage or plaintiff, as an assignee, is not a material breach

of the Conley mortgage let alone the Conley note.[26]   See ClearVue

Opportunity XV, LLC v. Sheehan, 2015 WL 5098658, at *12.

Summary judgment on the breach of contract claim is therefore

appropriate.

B.   Claim for Possession (Count IV)

Plaintiff asserts that it is entitled to summary judgment

on its claim for possession in Count IV.  (Docket Entry # 60).

Defendant argues that plaintiff did not own "the interests in

Conley's mortgage loan at the applicable time(s)" and failed "to

comply with the statutory notice requirements" or properly

consider Conley for a loan modification thereby "result[ing] in

a void foreclosure."  (Docket Entry # 68).  Defendant also

submits that plaintiff failed to conduct a commercially

reasonable foreclosure sale.  (Docket Entry # 68).

As explained by the court in Bailey:

> "Right to possession must be shown and legal title may be
> put in issue . . ..  Legal title is established in summary
> process by proof that the title was acquired strictly
> according to the power of sale provided in the mortgage;
> and that alone is subject to challenge."

---

[26]  Defendant also argues that the amounts in the June 2013
default notice, which total $169,550.21, "did not match up in
any discernable way with the payoff amounts subsequently
provided . . .."  (Docket Entry # 68) (citing defendant's
additional statement).  Paragraph 33 of the additional statement
of facts references a July 30, 2013 letter with a payoff
statement.  Defendant does not provide the discrepancy amounts
and, in any event, any discrepancy between the June 2013 notice
and the July 2013 letter is not a material breach of paragraph
22.

Bank of New York v. Bailey, 951 N.E.2d 331, 335-336 (Mass. 2011)
(quoting Wayne Inv. Corp. v. Abbott, 215 N.E.2d 795 (Mass.
1966)).  Where, as here, plaintiff brings an "action for
possession after foreclosure by sale, the plaintiff is required
to make a *prima facie* showing that it obtained a deed to the
property at issue and that the deed and affidavit of sale,
showing compliance with the statutory foreclosure requirements,
were recorded."  Id. at 336.

As previously discussed, plaintiff complied with section
54B, the foreclosure sale is not void and it otherwise validly
exercised the statutory power of sale.  Plaintiff was the holder
of the Conley note and the owner/assignee of the Conley
mortgage, as established by a proper chain of title, at the time
it published the foreclosure notice of sale and conducted the
foreclosure.  Plaintiff further established its right to
possession by demonstrating, through the assignment of the
mortgage, foreclosure deed and affidavit of sale, that it held
the mortgage at the time of the notice of sale and conducted a
lawful foreclosure pursuant to chapter 244.  See Maldonado v.
AMS Servicing LLC, 2012 WL 3779164, at *3 (D.Mass. Aug. 30,
2012).  Plaintiff also showed that it obtained the deed to the
property and that the deed and affidavit of sale were properly
recorded.  See Bank of New York v. Bailey, 951 N.E.2d at 335-36
(setting out these requirements).  The foreclosure deed

establishing plaintiff's title and ownership of the property is notarized and was received and registered at the Nantucket County Land Court less than a week after the foreclosure sale. (Docket Entry # 63, Ex. K).

For reasons explained previously, defendant's arguments do not avoid summary judgment on the claim for possession.  The commercially unreasonable sale argument is also deficient for reasons explained below with respect to the chapter 93A counterclaim.

Given the facts in the summary judgment record, plaintiff conducted a commercially reasonable foreclosure sale and no reasonable jury could conclude otherwise.  The notices sufficiently complied with paragraph 22, plaintiff properly advertised the sale and otherwise adhered to the applicable foreclosure statutes as previously discussed.  Neither the low price nor the sale to the mortgagee by itself provides sufficient evidence of a commercially unreasonable sale. Defendant's commercially unreasonable sale argument therefore fails to provide a proper basis to avoid summary judgment on the possession count.

In short, plaintiff has met its burden in showing there are no material facts in dispute regarding its legal title to the property and claim for possession.  See Maldonado v. AMS Servicing LLC, 2012 WL 3779164, at *3; see also Federal Nat'l

Mortg. Ass'n v. Hendricks, 977 N.E.2d 552, 558-59 (Mass. 2012).
Plaintiff is therefore entitled to summary judgment on its claim
for possession in Count IV.

C.   Defendant's Counterclaim

    Plaintiff moves for summary judgment on defendant's
counterclaim.  Plaintiff submits that it established title to
the property and conducted a proper foreclosure sale in
compliance with Massachusetts law.  As previously noted,
defendant asserts seven counts in the counterclaim.  Plaintiff
addresses the counts in the counterclaim for breach of contract,
breach of the implied covenant of good faith and fair dealing,
negligence, chapter 93A and unlawful foreclosure.  (Docket Entry
# 60).  Because plaintiff does not address counts one and six of
the counterclaim, these counts remain in this action.

    With respect to the unlawful foreclosure claim in Count
Five, it alleges deficiencies in the foreclosure process that
are addressed and rejected above, namely, plaintiff's lack of
standing, lack of title to the Conley mortgage, failure to
comply with certain foreclosure statutes, failure to conduct a
commercially reasonable foreclosure sale and "breaches of the
mortgage contract."  (Docket Entry # 27, ¶¶ 91-98).  Construing
the record in defendant's favor and for reasons already
discussed, the foreclosure was not unlawful and plaintiff is
entitled to summary judgment on the counterclaim in Count Five.

(1) Breach of Contract

In Count Two of the counterclaim, defendant asserts that plaintiff breached the terms of the Conley "mortgage by failing to comply with the terms thereof," presumably paragraph 22, and with "the requirements of G.L. c. 183, s. 21, c. 244, s. 3, 14, 15, 17, 17B, 35A-C all as may be applicable before unlawfully attempting to foreclose on the property . . .." (Docket Entry # 27, ¶ 79). In opposing summary judgment as to the counterclaim, defendant simply states that, "Conley has sufficiently pled her counterclaims, supported them and moved to strike inadmissible hearsay documentation relied on by Plaintiff in its instant motion" and, "[a]s a result, . . . averred enough disputes of material fact to survive Plaintiff's motion for summary judgment . . .." (Docket Entry # 68).

In seeking summary judgment, plaintiff argues that the foreclosure was conducted in strict compliance with Massachusetts law and in accordance with the terms of the mortgage. (Docket Entry # 60). For reasons previously discussed and as correctly pointed out by plaintiff, it acquired title to the property in compliance with Massachusetts law and is the owner of the property as evidenced by the foreclosure deed. Reasonable steps were taken and a good faith effort made to avoid foreclosure prior to sending the required notices.

Plaintiff is therefore entitled to summary judgment on the breach of contract claim in Count Two.

(2) <u>Implied Covenant of Good Faith and Fair Dealing</u>

In Count Three of the counterclaim, defendant asserts a violation of the covenant on the basis, inter alia, that plaintiff unlawfully assigned the Conley mortgage, engaged in violations of MERS rules and the terms of the Conley mortgage and failed to properly consider defendant for a mortgage modification.  In moving for summary judgment, plaintiff points to the absence of any evidence of a lack of good faith. Plaintiff also contends that defendant fails to provide sufficient evidence that it deprived defendant of the benefits of the Conley mortgage or the Conley note.

The parameters of the implied covenant of good faith and fair dealing are well established.  The covenant of good faith and fair dealing implied in the Conley mortgage and/or the Conley note requires that the parties not "'do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'"  <u>Nile v. Nile</u>, 734 N.E.2d 1153, 1160 (Mass. 2000); see <u>Uno Restaurants, Inc. v. Boston Kenmore Realty Corp.</u>, 805 N.E.2d 957, 964 (Mass. 2004) (covenant "preserved so long as neither party injures the rights of another to reap the benefits prescribed by the terms of the contract").  The covenant governs the manner of

performance of the contract and requires that, when performing a
contract's obligations, the parties must "'remain faithful to
the intended and agreed expectations' of the contract." <u>Chokel
v. Genzyme Corp.</u>, 867 N.E.2d 325, 329 (Mass. 2007). "In the
lender-borrower context, the implied covenant 'would require
that the bank be honest in its dealings with plaintiffs and that
it not purposefully injure their right to obtain the benefit of
the contract.'" <u>FAMM Steel, Inc. v. Sovereign Bank</u>, 571 F.3d
93, 100 (1st Cir. 2009) (internal brackets and citations
omitted). The bank's conduct that the district court rejected
as a violation of the covenant and allowed the bank's summary
judgment motion in <u>FAMM</u>, which the First Circuit affirmed,
included "failing to respond to restructuring proposals or
offers to purchase." <u>Id.</u>

Here, the record is devoid of any dishonesty on the part of
plaintiff. It also fails to show that plaintiff purposefully
did anything to deprive defendant of the benefits of the Conley
mortgage and/or the Conley note. The Conley mortgage conveyed a
power of sale to the lender and its assigns, such as plaintiff,
and secured to the lender and its assigns defendant's covenant
to "pay when due the principal" and interest under the Conley
note. (Docket Entry # 63-2). Defendant defaulted on that
covenant. Notably, the fact that defendant is in default
"necessarily alters the contours of the covenant of good faith

and fair dealing." Id. at 101.  As elucidated by the First
Circuit's decision in Famm, the implied covenant is not breached
by a bank engaging in "'hard-nosed' dealings with a borrower
where it was undisputed that the bank did not take any of the
adverse actions before the borrower defaulted.[27]  Id.
(summarizing and quoting Federal Deposit Insurance Corp. v.
LeBlanc, 85 F.3d 815, 822 (1st Cir. 1996), in parenthetical).
Thus, even assuming for purposes of argument that plaintiff or
its agent disclosed this litigation to the highest bidder
(Double B Capital), such a tactic does not sufficiently evidence
a lack of good faith or a purposeful intent to deprive defendant
of the benefit of the mortgage contract or note.  Likewise, the
challenged "'hybrid'" foreclosure process does not violate the
implied covenant where, as here, the borrower, i.e., defendant,
defaulted and the lender's downstream assignee exercised the
power of sale in strict compliance with the requisite statutes
and notice requirements.  Given the absence of evidence of a
lack of good faith, dishonesty or conduct purposefully done to
injure defendant's right to the benefits of the Conley mortgage
and the Conley note, summary judgment on the claim for breach of
the implied covenant (Count Three) is appropriate.

---

[27]  Prior to the assignments of the Conley mortgage that
defendant attacks, all of which were valid, defendant was in
default as of October 1, 2009.

(3) <u>Negligence</u>

The negligence claim alleges that, due to the existence of a mortgage contract, plaintiff owed defendant a duty of care to "follow applicable law" to ensure a proper foreclosure on the property, including giving defendant the required notices and conducting a proper review upon receiving Conley's request for a loan modification. (Docket Entry # 27). The claim further alleges that plaintiff was negligent in its supervision of BSI and in its advertisement of the property when plaintiff lacked standing as well as "in conducting a commercially reasonable foreclosure sale." (Docket Entry # 27).

Plaintiff moves for summary judgment on the claim because it complied with the statutory requirements in conducting the foreclosure and it conducted a thorough review of the loan modification request in compliance with section 54B. Plaintiff is correct.

In order to establish a negligence claim, a plaintiff must show:

> (1) A legal duty owed to the plaintiff by the defendant;
> (2) a breach of that duty by the defendant; (3) causation;
> and (4) actual loss by the plaintiff.

<u>Delaney v. Reynolds</u>, 825 N.E.2d 554, 556 (Mass.App.Ct. 2005). Ordinarily, "'the mere relationship between mortgage holder or servicer and borrower does not give rise to a fiduciary duty to the latter.'" <u>Almeida v. United States Bank Nat'l Ass'n</u>, 2014

WL 907673, at *7 (D.Mass. March 10, 2014) (quoting <u>Shaw v. BAC</u> <u>Home Loans Servicing, LP</u>, 2013 WL 789195, at *4 (D.Mass. March 1, 2013)); <u>accord</u> <u>MacKenzie v. Flagstar Bank, FSB</u>, 738 F.3d 486, 495 (1st Cir. 2013) ("relationship between a borrower and lender does not give rise to a duty of care under Massachusetts law"); <u>see</u>, <u>e.g.</u>, <u>Dumeus v. CitiMortgage, Inc.</u>, 2015 WL 404611, at *1 (D.Mass. Jan. 29, 2015) (rejecting plaintiff's claim "that CitiMortgage acted negligently by omitting key documents that would be necessary to prove its right to foreclose on the property" because no duty of care between borrower and lender). Thus, "there is no duty to negotiate for loan modification once a mortgagor defaults."   <u>MacKenzie v. Flagstar Bank, FSB</u>, 738 F.3d at 493.

"[A]n exception" to the no-duty rule applies inasmuch as "a mortgagee does owe a fiduciary duty to a mortgagor 'to refrain from committing fraud, bad faith or failing to use reasonable diligence in the context of a foreclosure sale.'"   <u>Andersen v.</u> <u>Lasalle Bank Nat'l Ass'n</u>, 2016 WL 3093375, at *5 (D.Mass. June 1, 2016) (quoting <u>Pearson v. United States</u>, 831 F.Supp.2d 514, 519-20 (D.Mass. 2011)) (ellipses omitted).   A mortgagee's "'duty at common law [is] to protect the interests of the mortgagor in exercising a power of sale in a mortgage.'"   <u>MacKenzie v.</u> <u>Flagstar Bank, FSB</u>, 738 F.3d at 493.   "'Typically, this entails mak[ing] reasonable efforts to sell the property for the highest

value possible.'"  Id.; see Williams v. Resolution GGF OY 630
N.E.2d 581, 584 (Mass. 1994) ("mortgagee has a duty 'to obtain
for the property as large a price as possible'").  Where, as
here, the mortgagee is the purchaser, it is "'held to the
strictest good faith and the utmost diligence.'"  Id. at 584
(internal citations omitted).  On the other hand, "A low price
for the collateral does not by itself indicate bad faith or lack
of diligence in disposition of mortgaged real estate." Pemstein
v. Stimpson, 630 N.E.2d 608, 611 (Mass.App.Ct. 1994).  "Nor does
such an indication flow from the circumstance that the mortgagee
turns out to be the sole bidder at the foreclosure sale."  Id.
"On those occasions when the court held a sale invalid, the bad
faith or failure of diligence has been of an active and
conspicuous character."  Id.; accord Santander Bank, N.A. v.
Baldwin Realty, LLC, 2015 WL 1781741, at *7 (D.Mass. April 17,
2015) ("Massachusetts courts typically have not found a
foreclosure sale to be invalid unless 'the bad faith or failure
of diligence has been of an active and conspicuous character'");
see, e.g., Sandler v. Silk, 198 N.E. 749, 751 (Mass. 1935); Bon
v. Graves, 103 N.E. 1023, 1026 (Mass. 1914) (failure of mortgage
holder to notify interested neighbors of foreclosure sale made
it apparent that mortgage holder had acquired mortgage with
intent "to secure property for himself at his own price"); Clark

v. Simmons, 23 N.E. 108, 108-109 (Mass. 1890) (no notice to anyone of adjourned date of foreclosure sale).

Again, there is a dearth of evidence that plaintiff engaged in any fraudulent conduct or acted in bad faith in conducting the foreclosure.  It advertised the foreclosure sale property for sale and complied with the foreclosure statutes, including the power of sale statute in chapter 183, section 21.  Such reasonable efforts belie the existence of any breach.  Summary judgment on the negligence claim is warranted.

(4)  Chapter 93A

The chapter 93A claim alleges violations of various statutes and corresponding Massachusetts regulations (the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et. seq., and "940 CMR 7.00 et seq.").  The claim also identifies "unfair and deceptive acts and practices involving, among other things, the unlawful and defective default notices" and foreclosure process. (Docket Entry # 27, ¶¶ 107, 108) (Docket Entry # 62-10).  The claim further states that, "[F]ailing to provide proper notices under applicable law or under the MERS mortgage, failing to properly consider Conley for a loan modification as required by applicable law and thereafter engaging in a commercially unreasonable 'hybrid' foreclosure process" constitute unfair and deceptive acts and practices.  (Docket Entry # 27, ¶ 109).  The

challenged "'hybrid' foreclosure process" consists of proceeding with the "judicial foreclosure brought in this court" thereby prejudicing legitimate bidding on the property at the subsequent non-judicial March 7, 2014 foreclosure sale. (Docket Entry # 27, ¶ 109) (Docket Entry # 62-10, ¶ 5).

Plaintiff moves for summary judgment on the chapter 93A claim because it conducted a proper and valid foreclosure in compliance with the foreclosure statutes and the sale was commercially reasonable. Plaintiff also points out that it considered defendant's request for a loan modification. As noted above, plaintiff did not qualify for a modification because, employing defendant's 2011 and 2012 tax returns, her mortgage payment amounted to approximately 64% of her monthly income.

In response to these arguments, defendant addresses the chapter 93A claim as based on conducting a commercially unreasonable sale, including the purported hybrid nature of the foreclosure.[28] Defendant argues that material facts exist as to

---

[28] The sole references to chapter 93A in the opposition are as follows, all made in the context of whether a commercially reasonable sale took place:

> As alleged by Conley in her counterclaims and pre-suit Chapter 93A letter, Plaintiff did not conduct a commercially reasonable sale and thus the purported March 7, 2014 foreclosure is void . . . BSI's action(s) in attempting to conduct a "hybrid" non-judicial/judicial foreclosure sale that is not commercially reasonable due to

why Double B Capital backed out of the sale.[29]  For purposes of
summary judgment, defendant therefore waives the other grounds
alleged as a basis for chapter 93A liability in the counterclaim
(Docket Entry # 27).  See Coons v. Industrial Knife Co., Inc.,
620 F.3d at 44; Higgins v. New Balance Athletic Shoe, Inc., 194
F.3d 252, 260 (1st Cir. 1999) ("district court is free to
disregard arguments that are not adequately developed"); see
also U.S. v. Caparotta, 676 F.3d 213, 218 (1st Cir. 2012)
("argument consist[ing] of just two sentences and two cursory
citations in his brief . . . is therefore waived"); Vallejo v.
Santini-Padilla, 607 F.3d 1, 7 & n.4 (1st Cir. 2010) (plaintiffs
have "not cited a single authority in support of their assertion
that their failure to timely oppose the motion to dismiss did
not constitute waiver" and noting that "[p]laintiffs did not
properly raise their arguments below"); see generally Merrimon

---

the litigation commenced by BSI, Plaintiff and their
attorneys, is an unfair and deceptive act under Chapter 93A
for which Conley has suffered damages, both statutory and
actual, as identified in her pre-foreclosure Chapter 93A
demand letter (ECF 62-10) and in her counterclaims.

(Docket Entry # 68).

[29]  The summary judgment record merely reveals that Double B
Capital was the successful and highest bidder but did not
consummate the sale.  Plaintiff, as the second highest bidder,
purchased the property.  The notice of the foreclosure sale
advised the public that the mortgagee reserved the right to sell
the property to the second highest bidder in the event the
highest bidder "default[ed] in purchasing" the property.
(Docket Entry # 63-11, p. 4).

v. Unum Life Ins. Co. of America, 758 F.3d 46, 57 (1st Cir. 2014) ("'[e]ven an issue raised in the complaint but ignored at summary judgment may be deemed waived'").

Accordingly, this court turns to the argument that plaintiff violated chapter 93A, section nine, by conducting a commercially unreasonable foreclosure sale.  Chapter 93A "proscribes 'unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.'"  Juarez v. Select Portfolio Servicing, Inc., 708 F.3d 269, 280 (1st Cir. 2013) (quoting chapter 93A, section 2). "'A practice is unfair if it is within the penumbra of some common-law, statutory, or other established concept of unfairness; is immoral, unethical, oppressive, or unscrupulous; and causes substantial injury.'"  Young v. Wells Fargo Bank, N.A., 717 F.3d at 240 (chapter 93A claim alleging HAMP violations) (quoting Linkage Corp. v. Trustees of Boston University, 679 N.E.2d 191, 209 (Mass. 1997)).  The "crucial factors" in determining whether an act or practice is "unfair" are "the nature of [the] challenged conduct" as well as the "purpose and effect of that conduct."  Massachusetts Employers Ins. Exchange v. Propac-Mass, Inc., 648 N.E.2d 435, 438 (Mass. 1995).  A practice is deceptive "'if it "could reasonably be found to have caused a person to act differently from the way he or she otherwise would have acted."'"  Aspinall v. Philip Morris

84

Companies, Inc., 813 N.E.2d 476, 486 (Mass. 2004) (brackets omitted).

In presenting the commercially unreasonable sale argument as rendering the foreclosure sale void and/or a violation of chapter 93A, defendant relies and cites to Pemstein v. Stimpsen, 630 N.E.2d 608, 612 (Mass.App.Ct. 1994). (Docket Entry # 68, pp. 16-19). As stated in Pemstein, "If the statutory norms found in G.L. c. 244, §§ 11-17B, governing foreclosure of real estate mortgages, have been adhered to, Massachusetts cases have generally regarded that as satisfying the fiduciary duty of a mortgagee to deal fairly with the mortgaged property, unless the mortgagee's conduct manifested fraud, bad faith, or the absence of reasonable diligence in the foreclosure sale process." Pemstein v. Stimpson, 630 N.E.2d at 612. As explained in the context of discussing the existence of a duty vis-à-vis the negligence claim, "A low price for the collateral does not by itself indicate bad faith or lack of diligence in disposition of mortgaged real estate." Id. "Nor does such an indication flow from the circumstance that the mortgagee turns out to be the sole bidder at the foreclosure sale." Id. "On those occasions when the court held a sale invalid, the bad faith or failure of diligence has been of an active and conspicuous character." Id. at 612-13; see, e.g., Sandler v. Silk, 198 N.E. at 751; Bon v. Graves, 103 N.E. at 1026; Clark v. Simmons, 23 N.E. at 108-109.

As previously discussed, plaintiff did not violate its fiduciary duty in marketing the property and in sending the required notices.  In conducting the foreclosure sale, plaintiff did not contravene the penumbra of a Massachusetts common law concept of unfairness, which imposes a duty on the mortgagee "'to protect the interests of the mortgagor in exercising a power of sale in a mortgage,'" MacKenzie v. Flagstar Bank, FSB, 738 F.3d at 493.  Under the circumstances of this case, the foreclosure process and sale was not unfair.  Plaintiff protected defendant's interest in receiving a high or a market-based price for the property in light of the efforts to advertise the property.  BSI, plaintiff's servicer, considered defendant's loan modification request in a good faith effort to avoid foreclosure.  Defendant was in default thus entitling plaintiff, as the mortgagee under an unbroken chain of assignments and the holder of the Conley note, to exercise the power of sale in the Conley mortgage.  It is true that a chapter 93A violation arises "where foreclosure of a mortgage, even on an actual default, is conducted in bad faith to the detriment of the mortgagor." Kattar v. Demoulas, 739 N.E.2d 246, 257 (Mass. 2000) (chapter 93A claim under section 11 based on mortgagee's motive in conducting "foreclosure as retribution" for Kattar's refusal to testify in unrelated matter).  Thus, the fact that the foreclosure sale was legal or valid does not dispose of the

chapter 93A claim.  See id. ("[l]egality of underlying conduct
is not necessarily a defense to a claim under c. 93A").  Here,
however, there is no evidence of bad faith or retribution of the
kind exhibited in Kattar that would allow a finder of fact to
find a violation of chapter 93A, section nine.  Cf. Morse v.
Mutual Federal Savings & Loan Association, 536 F.Supp. 1271,
1281-82 (D.Mass. 1982) (foreclosure for ulterior purpose to
collect mortgagor's bad check).  Filing suit in this court in
light of defendant's default and thereafter conducting the
foreclosure sale was neither unfair nor deceptive and, without
more, did not render the foreclosure sale commercially
unreasonable.[30]  The chapter 93A claim in Count Seven of the
counterclaim is therefore subject to summary judgment.

CONCLUSION

In accordance with the foregoing discussion, the motions to
strike (Docket Entry ## 70, 80) are **DENIED**.  The summary
judgment motion (Docket Entry # 59) is **ALLOWED** as to counts I,
II and IV in the amended complaint and counts two, three, four,
five and seven of the counterclaim; and otherwise **DENIED**.
Absent a stipulation by the parties with respect to the
remaining counts in the amended complaint (counts V and VI) and

---

[30]  As the summary judgment target with the underlying burden of
proof on the chapter 93A claim, it was incumbent upon defendant
to provide evidence inasmuch as plaintiff pointed out the
absence of evidence to support the chapter 93A claim.

the counterclaim (counts one and six), this court will conduct a status conference on September 22, 2016 at 2:45 p.m.

                                           __/s/ Marianne B. Bowler_____
                                           **MARIANNE B. BOWLER**
                                           United States Magistrate Judge